| 66 | 687 |
| 75 | 252 |
| 77 | 103 |
| 66 | 687 |
| 85 | 300 |
| 66 | 687 |
| 92 | 80 |

THE STATE OF TEXAS V. D. H. SNYDER ET AL.

(Case No. 1827.)

1 JURISDICTION—SCHOOL LANDS.—Suit was brought by the state April 12, 1884, in Mitchell county, Texas, to recover thirty sections of school land alleged to have been fraudulently purchased from the state   The suit was brought under authority of the act of April 14, 1883, to investigate land frauds, etc.   On October 15, 1884, the defendant pleaded to the jurisdiction of the court, setting forth that under the act authorizing the suit, the district court of Travis county alon. had jurisdiction of such suits when brought to recover thirty sections of land   On December 30, 1884, the state amended its petition, and reduced its claim to twenty sections of land   On January 5, 1885, the defendants renewed their plea to the jurisdiction, setting forth, that from April 12, 1884, to December 30, 1884, the suit was, and remained a suit for more than twenty sections of land of which the district court of Travis county alone had jurisdiction   On January 7 1885, the plea to the jurisdiction was sustained.  *Held*.

(1) The act of April 14, 1883, required such suits to be brought within twelve months after it took effect

(2) The suit was practically a suit to try title

(3) In such a suit the state may set up such facts as are necessary to such relief as could be given only by a court of equity, without in the least depriving the action of its character as an action to try title to land.

(4) The jurisdiction of the district court of Mitchell county over the subject matter of litigation, was not dependant on the act of April 14, 1883, but existed by reason of the jurisdiction conferred on it by the constitution.

(5) The sixth section of the act of April 14, 1883, determined the venue of actions to be instituted under it, but did not confer jurisdiction over the subject matter; and if no objection were made in proper time and manner to the venue, a suit might be maintained in any county in the State for over twenty-five sections of land

(6) The court had jurisdiction over the subject matter of the action and never lost it, except as to sections the claim to which was abandoned by amendment That amendment was to cure a defect pointed out by defendant, and was proper though it related to the venue of the case, and affected the question of jurisdiction over the person.

(7) If, while the action stood for thirty sections, a plea to the jurisdiction had been urged, it should have been sustained, not because the court had no jurisdiction of the subject matter, but because the defendants under the act were entitled to be sued in Travis county

(8) The amendment did not set up a new cause of action unless it embraced land not sued for in the original petition, but merely abandoned a part of the cause of action set up in the original petition, nor was it a fraudulent attempt to confer jurisdiction

2. TENDER IN SUITS BY THE STATE.—In an action by the state to recover possession of school land alleged to have been fraudulently purchased, it is not necessary to a recovery, that the state should tender a repayment of that portion of the purchase money already paid.

3. SAME.—Even if the general rule, which requires a tender to repay purchase money received when the plaintiff seeks a rescission of a contract of sale, were applicable when the state is plaintiff, yet, if the state seeks not only to recover the rental value of the land, but other damages, and it does not appear from the petition that the purchase money paid exceeded the sums thus claimed by the state, the failure of the state, as plaintiff, to tender repayment of purchase money would constitute no ground for demurrer

4 PRESUMPTION—SUIT AGAINST THE STATE.—It will be conclusively presumed in the absence of a statute authorizing suit against the state, that it fully recognizes every just claim the citizen defendant has against it, that in its own way it will do justice in regard thereto, and that it has the ability to do so. The reasons for enforcing the equitable rule, which requires a tender to repay purchase money received by one who seek a rescission of a contract of sale, do not exist

5. TENDER—STATUTE CONSTRUED.—The constitution provides · "No money shall be drawn from the treasury but in pursuance of specific appropriation made by law," and the fact that there was no provision in the law requiring suits to set aside fraudulent purchases of school land, whereby money could be obtained from the treasury to tender back purchase money received by the state, indicates the legislative intention that no tender to repay should be required. The law not only required such suits to be brought, but intended that they should be heard and determined

6. SUITS BY THE STATE.—Though it is true that when the state becomes a litigant in

its own courts, its rights must be determined by the same rules applicable to other litigants, it does not, therefore, follow that the same remedy procedure or relief will be given by the courts to the one as to the other.

7. SUIT AGAINST THE STATE.—Courts have no authority to enforce claims against the government, in whatever form of action they may be urged, unless the institution of such action, or the recognition of such claim, has been expressly sanctioned by law.

8. TENDER —Though, as a general rule, in a suit brought by the state a court has power to adjust equities growing out of the subject matter of a suit, this rule does not apply to the extent of requiring the state in an action brought by it to recover land, to tender back purchase money received as a prerequisite to have its rights adjudicated, when the law authorizing the suit has made no provision for obtaining the money from the treasury.

9. PURCHASER—SCHOOL LAND.—Under the act of April 12, 1883, when one had acquired seven sections of school lands not within five miles of the geographical center of a county, he could not acquire in the name of another, by purchase from the state, a greater quantity under another application was which made really for his own benefit. To guard against an evasion of the law in this respect, it was provided that "all applications for the purchase of land, should be made in the name of the person intended to be the actual purchaser thereof."

10. SAME—PURCHASER OF SCHOOL LAND—LAW CONSTRUED.—It is a matter of no importance that an application to purchase school land was made by a minor through an adult acting for him, or by a married woman, or that the money paid, or to be paid, was advanced, or to be furnished by some other person, these are questions on which the state has no interest. If the purchase was intended to be for the benefit of the minor or married person, the purchase was valid. If the purchase was to evade the law, with intent at the time of purchase that some other person instead of the one in whose name the land was bought, should be the real owner, then the purchase was voidable.

11. PARTIES.—In a suit by the state to set aside a sale of land under the land fraud act, all parties in whose names purchases were alleged to have been made for the benefit of a particular defendant, were proper and necessary parties defendant, except such as may have conveyed to that particular defendant, before the institution of the suit.

APPEAL from Mitchell. Tried below before the Hon. Wm. Kennedy.

This suit was brought by the state against D. H. Snyder, a citizen of Williamson county, Texas, in the district court of Mitchell county, April 12, 1884, under the act of April 14, 1883, which created a land-board, and the caption of "an act to investigate alleged land frauds," which declare its object to be to investigate the operations of the general land office, to investigate the John Gibson certificates, to authorize the institution of suits by the state to annul purchases of school lands improperly made, and to authorize the confirmation and validation of other purchases of school lands.

The petition was filed April 12, 1884, two days before the time for suing under the act, which expired by limitation, to recover thirty

sections of school land which it was alleged D. H. Snyder had made, or caused to be made, fraudulent applications for, either in his own name, or by conspiring with his co defendants; that he had, by like false and fraudulent means, induced the treasurer of the state to receive thirty-two dollars for each section, that by like means he had induced the commissioners of the land office to issue certificates of purchase; that D. H. Snyder, in furtherance of his fraudulent design, had procured conveyances from certain parties, named as co-conspirators, for lands applied for in their names, and that all things set forth and complained about were done for the sole use and benefit of him, the said D. H. Snyder, and not for the use and benefit of the said defend-ants, and persons, or either of them, in whose respective names said applications, payments, etc., were made. The petition alleged that the land-board, acting under the act of April 14, 1883, had advised and directed this suit. It also alleged, in terms, that D. H. Snyder had already, prior to any of said applications being made, acquired in his own name, as many sections of the public land as could be legally acquired by him. The petition closed with a prayer to cancel the sales by the state to Snyder, and for damages for the use of the land.

At the October term, 1884, defendants presented to the court the question of its jurisdiction apparent on the face of the plaintiffs peti-tion, which showed that D. H. Snyder was a resident of Williamson county, and moved to dismiss the suit; alleging, in effect, that the peti-tion, on its face, showed that the cause of action was the alleged fraud-ulent acquisition of thirty sections of school land for the benefit of D. H. Snyder, which cause of action was not cognizable in the district court of Mitchell county, and that by the terms of the law authorizing the suit, Travis county alone had jurisdiction, when, as in this case, the cause of action was the fraudulent acquisition of over twenty-five sections of land. Defendants also filed special exceptions to the peti-tion. The record failed to show that the plea to the jurisdiction was argued and urged during the term.

On December 30, 1884, during the next ensuing term of the court, the plaintiff filed an amended original petition containing substan-tially the same allegations found in the original petition, except that the plaintiff dismissed as to six sections, thus attempting to bring the case within the jurisdiction of Mitchell county, and asked judgment only for the recovery of twenty-four sections.

The defendants pleaded again to the jurisdiction of the court at the January term, 1885, and moved to dismiss for want of jurisdiction, and also presented, by plea, the defence of limitation, alleging, in effect, that the amended petition was filed more than twelve months after

the passage of the act of April 14, 1884. Special exceptions were also filed to the petition:

1. Because it showed that the state received purchase money for the land through its constituted tribunals, and asked a cancellation of the sale with no offer to return the money received.

2. Because the law under which the purchases were made did not require that they should be made for the benefit of the purchaser.

3. Because the charges of fraud in the petition were vague, uncertain and indefinite.

4. Because the petition did not charge that those who purchased the lands sued for were other than real persons, entitled, under the laws, to acquire school lands, or that the co-defendants of D. H. Snyder had ever transferred, or offered to transfer, to him the lands purchased in their names, or done, or offered to do, any other act in violation of law, injurious to the state or fraudulent in its character.

5. Because of its misjoinder and want of proper parties defendant.

The court sustained the plea to jurisdiction, and also defendant's exceptions, and dismissed the suit.

*John D. Templeton*, Attorney General of the state, on the proposition that the cause of action was not changed by the amendment, and that lien did not run against the original petition, cited: Hill *v.* Clay, 26 Tex., 650; Lee *v.* Boutwell, 44 Tex., 151; Scoby *v.* Sweatt, 28 Tex., 729; Killebrew *v.* Stockdale, 51 Tex., 529.

He submitted also the following propositions:

1. That the treasurer of the state, being without authority to receive the money from the defendants for the land in question, the purchase being in fraud of the law, it was no more than his personal act, and as to the state was null and void, and imposed no duty or obligation whatever upon the state to refund or see that the money so received from the defendants is refunded or returned to them.

2. That although the acts of the said officer in receiving the said money, was done without intent to violate his duty, but as appeared to him in the discharge of his duty, yet the act being the result of the fraud practiced upon him by the defendants, in order to enable D. H. Snyder to acquire more than seven sections of land, in violation of section 5, chapter 28, p. 24, Laws Called Session 1879, and section 5, chapter 105, Laws Regular Session, page 119, they were none the less acts *ultra vires*, and null and void, so that the said money was not received by him in his official capacity, and no duty to see that the same is refunded by the said officer is imposed upon the state.

3. All acts done by the surveyor, treasurer and the commissioner

of the general land office, in connection with the transaction, not within the limits of their actual authority, though done in good faith or innocently, are none the less void than if they had known the fraudulent and unlawful purpose of the defendants.

4. The prohibition against the purchase by one person of more than seven sections of the land was equivalent to a prohibition against the said officers doing any act to aid him in the purchase, and all such acts are, as to the state, void.

And in support thereof cited the following authorities: Bryan v. Page, 51 Tex., 532; United States v. Kirkpatrick, 9 Wheat., 735; Hart v. United States, 95 U. S., 316; Randall v. State, 16 Wis., 362; State v. Hastings, 12 Id., 596; State v. Bevis, 86 N. C., 593; State v. Torinus, 24 Minn., 332; State v. Torinus, 37 Am. Rep., 395; Herzo v. San Francisco, 33 Cal., 134; McCracken v. San Francisco, 16 Cal., 628; Woodward v. Campbell, 39 Ark., 580; Johnson v. Frisbie, 29 Md., 76; Baltimore v. Reynolds, 20 Md., 1; Mayor v. Eschbach, 18 Md., 276; Delafield v. State, 26 Wend., 221, top page; Mechanics' Bank v. Bank of Columbia, 5 Wheat., 326; Curtis v. Inrerarity, 6 How., 146; Story on Agency, sec. 307a, 9th ed.; Floyd's Acceptances, 7 Wall., 680; Silliman v. Railway Company, 27 Grat., 130, 131; Cotulla v. Laxson, 60 Tex., 443.

5. To have legalized the receipt of the money and made it the act of the state, it must have been ratified by the legislature: Grogan v. State, 18 Cal., 590; Dillon on Mun. Corp., 464, 465; Delafield v. State, 26 Wend., 227, top page.

*A. W. Terrell*, for appellees, on the question of jurisdiction, cited: Caption of the Act of April, 14, 1883; see Laws of 18th leg., p. 106, sec. 6, 7, 10; Jour. of House of Rep., ses. of 1883, pp. 263, 443, 444, 470; Graham v. Roder, 5 Tex., 146; Tarbox v. Kennon, 3 Tex., 8; Bridge v. Ballew, 11 Tex., 270; Swigley v. Dickson, 2 Tex., 193; 1 Bibb, 341; 10 Watts, 299; 2 Wash. C. C. Rep., 463; Kansas City, St. Joe, etc. v. Campbell, 62 Mo., 585; Cohen v. Barrett, 5 Cal., 195; 3 Clark, Ia., 144; Simmons v. DeBare, 4 Bosw., (N. Y.) 547; Reed v. Railway Company, 33 Cal., 221, Chandler v. Nash, 5 Mich., 409; 27 Ala., 391; Johnston v. Louisville, 11 Bush, 527; 3 Dana, 501; 4 Watts and Sarg., 311, 92, 66; 2 Pike, 158; 2 Martin, 136; Smith v. Moors, 41 Vt., 205; Lurdaff v. Steubenville, 14 Ohio, (N. S.,) 336; Pete v. Shafer, 19 Ind., 173; Flottey v. Railway Company, 8 Hask., 235; Miller v. Taylor, 6 Hask., 480; Crofford v. Cothron, 2 Sneed, 492.

I. The suit being for the recovery of thirty sections of land under

the act of April 14, 1883, and not being brought in Travis county, but in violation of law, was no suit.

[No authorities are needed, but if desired, Gray v. Hodge, 60 Ga., 263, and other cases referred to.]

II. The district court of Mitchell county had no jurisdiction either of the subject matter or of the defendant. Since its jurisdiction depended on the amount claimed, and the appellant's amended petition of December 30, 1884, which, for the first time, stated a cause of action once within the jurisdiction of that court, could not relate back to the filing of the original petition of April 12, 1884, so as to prevent the bar of limitation.

Williams v. Randon, 10 Tex., 77; Littlefield v. Fry, 39 Tex., 299; Henderson v. Kissam, 8 Tex., 47; Hopkins v. Wright, 17 Tex., 35; Connoly v. Hammond, 58 Tex., 11; McIlhenny v. Lee, 43 Tex., 204, 205; Pridgin v. Strickland, 8 Tex., 436; McNeil v. Childress, 34 Tex., 330; Governor v. Burnett, 27 Tex., 36; Trego v. Lewis, 58 Penn. St., 463.

STAYTON, ASSOCIATE JUSTICE.—This action was brought April 12, 1884, to recover thirty sections of school land. D. H. Snyder answered on October 15, 1884, and, with other defenses, pleaded to the jurisdiction of the court, the fact appearing in the petition, that the suit was brought to recover thirty sections of land, and that under the law the district court of Travis county had jurisdiction.

On December 30, 1884, the state amended its petition and reduced its claim to twenty-four sections, which we understand to be a part of the same land claimed in the original petition. On January 5, 1885, the defendants, other than D. H. Snyder, answered, adopting fully all the pleadings theretofore filed by him; and all of the defendants, on the same day, under leave granted to D. H. Snyder to amend, adopted the plea to the jurisdiction filed by him, and with him answered fully to the matters going to the jurisdiction of the court and to the merits. So much of the amended plea to the jurisdiction of the court as is material is as follows:

"And all of those defendants say that said suit was brought; and from the date of filing the petition therein, to wit, April 12, 1884, to December 30, 1884, remained a suit, over which this court had, and now has no jurisdiction, and which, under the law, in view of the amount of land sought to be recovered, could be only brought in the district court of Travis county, Texas. Wherefore, defendants renew their prayer that said suit be dismissed for the want of jurisdiction in this honorable court to hear and determine the same."

The court did not act upon the plea to the jurisdiction until January 7, 1885, at which time it was sustained. It is urged here, as it doubt- less was in the court below, that the act of April 14, 1883, alone gave jurisdiction to the district court to hear and determine this class of cases. If this were true, it is evident that the district court for Mitchell county had no jurisdiction of this cause at the time this action was instituted, for the act declares: "that in all cases where twenty five sections or more of land, in excess of the seven sections authorized by law to be purchased by or for the benefit of any one person, or corporation, have been purchased by or for the benefit of any one person or corporation, suits for the recovery thereof shall be brought in the district court of Travis county   General Laws, 1883, p. 108.

The act required such suits to be brought within twelve months after it took effect, and unless the court had power to hear and determine the case at some time within the twelve months within which such suits were required to be brought, it could not be said that the state had brought a suit; for the filing of a petition in a court having no jurisdiction, is not, within the meaning of the act, the bringing of a suit; and the amendment made after the expiration of twelve months, could not confer jurisdiction.

This is practically an action in which the state seeks to try title to land described in the petition, in which the foundation of the defend- ants' claims are set out. The petition, in addition to asserting title and seeking adjudication thereof and possession, may set up such facts as are necessary to such relief as could be given only by a court of equity, without in the least depriving the action of its character of an action to try title to land. Dangerfield v. Paschal, 20 Tex., 536; Magee v Chadoin, 44 Tex., 488; Allen v. Stephanes, 18 Tex., 669; Grimes v. Hobson, 46 Tex., 419.

If such were not the character of the action, the amounts as to value of the property sought to be recovered, and as to the value of the rents and damages sought are such as would give jurisdiction to a dis- trict court in any ordinary action between individuals. We think it is a mistake to assume that the jurisdiction of the district court for Mitchell county, over the subject matter of litigation, is dependent on the act of April 14, 1883.

The constitution confers upon the district courts, jurisdiction "of all suits for the trial of title to land," and of all suits, complaints or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to five hundred dollars exclusive of interest. Art. 5, sec. 8, Constitution.

The state, as a plaintiff, has the same right as other plaintiffs to institute and maintain actions in the district courts upon any cause of action of which, under the terms of the constitution, such courts have jurisdiction, and so by force of the jurisdiction conferred on such courts by the constitution, and without reference to any statutory authorization. "It is an incident of sovereignty, not dependent upon any statute." The State v. Delesdenier, 7 Tex., 95.

The sixth section of the act of April 14, 1883, determines the venue of actions to be instituted under it, but does not confer jurisdiction over the subject matter; and under it, if no objection be made in proper time and manner by a defendant, a suit might be instituted and maintained by the state in Mitchell or any other county in the state for more than twenty-five sections of land. District courts, under the constitution, having jurisdiction over the subject matter of such an action, the state, as might any other plaintiff, might maintain such an action in any county in the state in so far as the jurisdiction over the subject mattter is concerned.

The venue to actions involving title to twenty-five or more sections of land was, by the act under which this action was instituted, placed in Travis county; a provision no doubt inserted for the benefit of the state, upon which, however, a defendant might insist, but the right to not have the suit brought elsewhere was one that a defendant might waive. Burnley v. Cook, 13 Tex., 591; Campbell v. Wilson, 6 Tex., 392; Masterson v. Ashcom, 54 Tex., 327; Peveler v. Peveler, 54 Tex., 56; Morris v. Runnells, 12 Tex., 177; Railway Company v. Graves, 50 Tex., 201.

If no objection to the venue, in such a case, be urged, the court would certainly have jurisdiction of the subject matter of the suit and of the persons of such defendants as were served with process or appeared. If, however, the jurisdiction of the court over the subject matter were dependent upon the statute, then it would be necessary to follow strictly its provisions, or the jurisdiction would not attach in the given case. We have considered these matters in view of the fact that it is insisted that the district court of Mitchell county had no jurisdiction while the action stood for thirty sections of land, and that, therefore, the subsequent amendment, made after the expiration of the twelve months within which the action was required to be brought, did not cure the matter of venue.

The court had jurisdiction of the subject matter of the action from the time it was instituted, and never lost it, except as to the sections claim, to which was abandoned by the amended petition; and any amendment filed with leave of the court, which cured a defect pointed

out by pleading of the adverse party, was proper, even though the defect thus obviated was one relating to the venue of the case and affecting the question of jurisdiction over the person. If, while the action stood for thirty sections of land, a plea to the jurisdiction had been urged, it should have been sustained, not because the court had not jurisdiction of the subject matter, but because the defendants under the act, were entitled to be sued in Travis county. When the plea to the jurisdiction was presented, the cause of action set up in the pleadings relied upon was such as could, under the statute, be properly tried in Mitchell county, with or without the consent of the defendants.

The amendment did not set up a new cause of action, unless it embraced land not embraced in the original petition, but merely abandoned a part of the cause of action set up in the original petition; nor can it be said to be a fraudulent attempt to confer jurisdiction on a court to which it did not properly belong.

The court after sustaining the plea to the jurisdiction acted upon the demurrers filed by the defendants, and sustained them. We will therefore, as the court had jurisdiction, consider the action of the court upon the demurrers. It was urged that the petition was defective on the following grounds:

1. Because it showed that the state received purchase money for the land through its constituted tribunals, and asked a cancellation of the sale with no offer to return the money received.

2. Because the law under which the purchases were made did not require that they should be made for the benefit of the purchaser.

3. Because the charges of fraud in the petition were vague, uncertain and indefinite.

4. Because the petition did not charge that those who purchased the lands sued for were other than real persons, entitled under the laws, to acquire school lands, or that the co-defendants of D. H. Snyder had ever transferred, or offered to transfer, to him the lands purchased in their names, or done, or offered to do, any other act in violation of law, injurious to the state or fraudulent in its character.

5. Because of its misjoinder and want of proper parties defendant.

It is insisted that the state, under the averments of the petition, is not entitled to recover unless it repay or tender the purchase money paid by the defendants.

In so far as the state is seeking only such relief as may be given by a court of law, i. e., to be adjudged the owner of the land, to recover rents, and to have its writ of possession, there can be no claims that before such relief can be granted the state must comply with any rule enforced in courts of equity; for the state, so far, asks for no equitable

relief. It alleges that the contracts were made through the fraud of the vendees, and by bringing this action, in effect, elects not to be bound by the contracts. If fraud, which vitiates all contracts, in fact existed, the vendor has the right to rescind it; and, if he re-acquires the possession of the property, in a court of law, may defend both his title and possession upon the ground that he has rescinded the contract to sell by his own act and volition.

The question of his right to do this will depend upon whether or not fraud existed, and this may be ascertained as well in a court of law as in a court of equity. If he has not re-acquired the possession, but has elected to rescind the contract to sell, or of sale, why may he not enforce his title and right to possession in a court of law, which is as competent as a court of equity, to ascertain whether the ground, upon which rescission is made, existed? Rescission for fraud depends on the volition of the party defrauded; he may waive his right and the contract becomes effective, or he may assert it and it becomes null. If it be found that the right to rescind existed, why may not effect be given to the determination of the party defrauded no longer to be bound by the contract, in a court of law, as well as in a court of equity?

The only question for a court to determine in such case is: Was the contract procured by fraud? If found so to have been, a court of law can give effect to the defrauded person's volition, on discovering the fraud, not to be bound by the contract, as fully as could a court of equity.

A judgment, determining that whatever title would have passed to a fraudulent vendee had the contract not been procured by fraud, remains in the defrauded vendor; that he is entitled to rents, if the case justified it, and that gives to such a vendor his writ of possession; practically secures to him everything which could be given by a court of equity in cases like the present, in which the vendee holds under an executory contract to convey the legal title remaining in the vendor. A distinguished elementary writer speaking upon the subject considered, says: "A court of law entertains an action for the recovery of possession of chattels, or, under some circumstances, for the recovery of land, or for the recovery of damages, and although nothing is said concerning it, either in the pleadings or in the judgment, a contract or conveyance, as the case may be, is virtually rescinded; the recovery is based upon the fact of such rescission, and could not have been granted unless the rescission had taken place. Here the remedy of cancellation is not expressly asked for, nor granted by the court of law, but all its effects are indirectly obtained in the legal action." Pome. Eq., 110.

Then, clearly, as to so much of the action as sought no other relief than such as a court of law can give, the court below erred in sustaining demurrers based on the fact that the state did not tender so much of the purchase money as may have been paid. The state, however, asks a decree declaring the contracts to sell void, and that the defendants be restrained from asserting claim under them. The reliet thus sought is equitable relief, and can it be given to the state without return or offer to return the purchase money paid?

The rule, at least as to litigation between man and man, which governs in courts of equity, is perhaps no where more fully and correctly stated than by Mr. Pomeroy, who says: "It may be regarded as an universal rule governing the court of equity in the administration of its remedies, that whatever may be the nature of the relief sought by the plaintiff, the equitable rights of the defendant growing out of, or intimately connected with, the subject of the controversy in question will be protected; and for this purpose the plaintiff will be required, as a condition to his obtaining the relief which he asks, to acknowledge, admit, provide for, secure or allow whatever equitable rights, if any, the defendant may have, and to that end the court will, by its affirmative decree, award to the defendant whatever reliefs may be necessary in order to protect and enforce those rights." Pome. Eq., sec. 388.

The rule which requires a vendor to return the purchase money paid when he asks rescission at the hands of a court of equity, has foundadation in the desire of courts of equity to protect all parties, and when its enforcement is not called for by the case presented, or where the enforcement of the rule is not necessary to the protection of the person against whom equitable relief is sought, then it is not enforced. Cases arise in which the use and occupation of land, sold under circumstances which justify rescission, will equal in value the sum paid by the vendee, and in such cases it would not be necessary to tender or repay the purchase money so paid, and a court of equity would adjust the equities of the respective parties. Terrell v. DeWitt, 20 Tex., 260; McCarty v. Mooder, 50 Tex., 287; Clay v. Hart, 49 Tex., 436.

The petition alleges the annual rental value of the land, and claims other damages, all of which the plaintiff, so far as the pleadings show, is attempting to recover. It also alleges that the defendants have paid to the state certain money, but it does not appear that the sums claimed by the state are less that the sum of the monies paid by the defendants. In view of this state of the pleadings it does not appear that a case exists in which it would be necessary for the state, if the general

rule stated be applicable to it, to offer to repay any part of the purchase money paid by the defendants, and the demurrer should have been overruled.  The defendants by their answer might have set up their equities, if any they have growing out of the transaction, with a view to the adjustment of the equities between the parties.  We do not wish, however, to put the decision of this question solely upon this ground.

If it be conceded that the defendants have paid money into the state treasury, under the circumstances stated in the petition, that it was paid to the state and is subject to its control, and waiving a consideration of the question whether one who has contracted for land under the circumstances alleged in the petition, could ordinarily avail himself of the equitable rule invoked, as to which there is much controversy, the question whether this rule can be invoked against the state still remains.  As before said, the purpose of the rule is protection and security to the person who is entitled to call it to his aid, and in any case in which that is seen to be unnecessary there is no reason why it should be enforced.

It is to be conclusively presumed, in the absence of a statute authorizing suit against the state in reference to a given matter, that it fully recognizes every just claim the citizen has against it, that in its own way it will do justice in reference thereto, and that it has ability to do so; and this is one of the reasons why no suit can be brought against the state without its consent.

Against such a plaintiff the reasons for enforcing the equitable rule do not exist, as do they in a suit by an individual.  We must look also to the legislation by which this suit was directed to be brought, in order to determine whether it was intended that such suits should be governed by the same rules, in every respect, as are suits between individuals, for if not, no rule of equity can override the will of the legislature, and make it necessary for the state to do everything that might be required of an individual, as a condition upon which it will be permitted to maintain an action or suit, which the constitution gives the court jurisdiction to try, and the legislature has directed to be brought.

It is not for courts to place terms, upon compliance with which only will they hear a cause directed by the legislature to be brought on behalf of the state, unless the legislation be such as to justify the belief that it was so intended

The appellees claim that the state received the money which they paid into its treasury, and that it became the money of the state, and

ceased to be their money in the hands of the person who is the treasurer of the state.

The constitution provides that "no money shall be drawn from the treasury but in pursuance of specific appropriation made by law." As was said in Treasurer v. Wygall, (46 Tex., 465), "the key that unlocks the state treasury is an act of the legislature, directing the thing to be done which is demanded, and not the judgment of a court, founded on equitable consideration, reaching beyond and changing the terms of the law in the disposition of property."

Of these laws the members of the legislature had knowledge at the time the act requiring suits of the character of this to be brought was passed. That act required suit to be brought within twelve months from the time the act took effect; but it made no provision for withdrawing from the treasury any sum to enable the officers charged with the duty of executing its commands to comply with the rule now insisted upon, and in this respect a subsequent legislature took no action.

The legislature evidently intended that the suits directed to be brought should not only be instituted, but that they should be heard and determined; and the fact that no appropriation was made to enable officers charged with the execution of the command, to comply with the rule now insisted upon, is strongly indicative of the intention of the legislature that such suits should be heard and determined without the return or offer to return such sums as parties against whom suits might be brought had paid into the treasury of the state; otherwise it certainly would have furnished to the officers, charged with the enforcement of the law, such sums of money as might be necessary to pay or tender to defendants in order to satisfy the rule now insisted upon, and to entitle the state to a hearing.

To hold otherwise would be to hold either that the legislature was ignorant of the law, if it be that such repayment or tender can be required of the state, or that it intentionally passed a law which it knew could not be enforced with the means provided. Neither of these presumptions can be indulged. There are many authorities to the effect that a state or other sovereignty when it becomes a litigant in its own courts, must have its rights determined by the same principles applicable to other litigants. That such is the correct rule there can be no doubt; in fact, no other rule could be established.

Its application is illustrated by the following cases decided by the supreme court of the United States: United States v. MacDaniel, 7 Peters, 1; Brent v. Bank, 10 Peters, 615; United States v. Barker, 12 Wheat., 559; The Floyd Acceptances, 7 Wall., 675; The Siren, 7

Wall., 159; United States v. Smith, 94 U. S., 217; United States v. Bostwick, 94 U. S., 66.   It has been recognized in this state as clearly as elsewhere; State v. Kroner, 2 Tex., 492; The State v. Purcell, 16 Tex., 305; The Governor v. Allbright, 21 Tex., 753.

In no country, governed by law, could the right of the sovereign and the subject be determined by diverse principles; but it does not follow from this that the same remedy, proceedure or relief will be given by the courts, to the one as to the other.   This results from reasons which have been in part stated, and from others which readily suggest themselves.   The rule in equity invoked is one through which litigants are, in effect, coerced into doing equity, but we know of no rule by which a court of a state, without its consent, may enforce such a rule against it.   To deny to the state the relief sought, if it show such facts as entitle it to such relief, unless it first complies with the rule invoked, is to coerce the state into a compliance with this rule.

If for any reason, other than rescission, the appellees could become entitled to have repaid such sums as were paid to the state on the land, they could not maintain an action to recover it unless authorized to do so by statute.   If not, whence springs the right or power of the court practically to give such relief, or otherwise to deny to the state the right to maintain an action which the legislature has directed to be brought?

The facts, through which the right to have the money repaid occurs, cannot affect the question of the power of the court, nor of the propriety or impropriety of its exercise.   Borden v. Houston, 2 Tex., 611; Bates v. the Republic, 2 Tex., 619.

These cases involved the right of a debtor to the government to off-set; but much of the reasoning of the court is applicable to this case. In case last cited it was said:   "The courts cannot adopt coercive measures to enforce, by direct action, payment for such services; nor can they suffer it to be done indirectly by permitting the claimant to retain public money in satisfaction of such claims, unless the subject has been placed by law within judicial cognizance and control.   For it is a well established principle that courts have no authority to enforce claims against the government, in whatever form of action they may be urged, unless the institution of such action or the recognition of such claim, has been expressly sanctioned by law.   In fact, the proposition that the government is above the reach of judicial authority by direct action, but within its control and coercive power by indirect suit, is a solecism and absurdity in its very terms."

We do not wish to be understood as holding that in a suit brought by the state a court has no power to adjust equities growing out of the

subject matter of the suit; but as holding that the rule in equity, in this case, is not applicable to, and cannot be enforced against the state in an action or suit brought by it.

It is true, that the law under which the appellees purchased did not, in express terms, require that the purchases should be made for the benefit of the purchaser; but it did provide, "that no person or corporation shall be allowed to purchase more than one section of six hundred and forty acres of said land when the same is classed as arable land suitable for farming purposes; but when the land is classed as suitable for grazing purposes, it shall be sold in quantities to suit the purchaser, but no person shall be permitted to purchase less than one hundred and sixty acres, nor more than three sections of six hundred and forty acres within five miles of the geographical centre of any county or upon any water front, nor more than seven sections at any other place."

This law forbids the original acquisition of more than seven sections of these lands, through purchase from the state, by any one person; and a purchase made for a person, who had acquired all the land he was entitled to acquire under the law, by another, or rather in the name of another, but for him, and in fact, for his benefit, would be clearly an evasion of the law, and practically a purchase by one person of more land than the law permits. To avoid evasions such as are alleged in the petition, the statute provides that "all applications for the purchase of said lands shall be made in the real name of the person intended to be the actual purchaser thereof."

If, in fact, the lands were purchased by the persons in whose names the purchases were made, with intention that the lands should become the property of the applicants, it is a matter of no importance that the applications may have been made by D. H. Snyder acting for them; nor is it important that the purchasers may have been minors, women under coverture, or persons related to D. H. Snyder in any degree whatever. Nor would it matter that the money paid or to be paid, was advanced, or to be advanced for the purchasers, by some other person, for in these questions the state has no interest.

The question is: Who was in fact and in law the purchaser? Was it a real transaction, as it appeared to be, or one simulated, and made for the purpose of evading the law, with intent, at the time of purchase, between the apparent purchaser and some other person, that such other person should be the beneficial and real owner? If the former, the purchases were valid; if the latter, they were voidable, and the state may assert their invalidity in this action. The applicants may have been real and not fictitious persons, may have been

entitled under the law to acquire school lands by purchase, and may not have transferred or offered to transfer to D. H. Snyder the lands of which they appear to be the purchasers, and still their purchases be invalid, if made not with intent to acquire the lands for themselves, but for another who had exhausted his right to buy such lands.

The purpose of the statute in placing a limit on the quantity of land one person could buy, was evidently to enable the many who might desire to buy such land, to do so, and thereby secure homes; but this purpose would be thwarted if one person could, through others, purchase more land than the law permits. When this opportunity to the many is given, and *bona fide* purchases made, the law no longer inter-feres with the right of the purchaser to sell, or of any one to buy as much land as he may desire; for the statute expressly recognizes the right of the purchaser to sell after he has made the first payment. All the persons who appear as purchasers, except such as are alleged to have conveyed to D. H. Snyder, prior to the institution of this suit, are made parties defendant, and it seems to us, properly so.

If it be insisted that those persons, who appear as purchasers, but had sold to D. H. Snyder, prior to the institution of this suit, should have been made parties, then it seems to us that the statute itself settles that question. It provides that suit shall be brought "against all persons who have made such illegal or fraudulent purchases and their vendee or vendees, who may have bought with notice of the illegality or fraud in the purchase under the acts before mentioned."

The preceding part of the section, in effect, declares who are the persons that "have made such illegal or fraudulent purchases," and one class consists of such persons "as have acquired, or by applica-tion attempted to acquire, illegally more land than they were permitted by law to purchase, by the use of the names of other persons." Gen-eral Laws 1883, p. 107.

This reaches those who have taken and those who have not taken transfers from the persons whose names were used in making the pur-chases; but the statute does not require those whose names were used, to be made parties, yet it is evident that they are proper parties, and it would seem to us necessary parties in all cases in which they have not made transfers.

For the errors mentioned, the judgment will be reversed, and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered April 5, 1886.]

NOTE.—This case is, from unavoidable causes, reported out of its regular order. It should have appeared among the cases of the Austin term.