## MURPH v. FOXWORTH.
### No. 10197.

Court of Civil Appeals of Texas. Galveston.
April 16, 1936.

Mark M. Carter, of Goose Creek, for plaintiff in error.

Vernon Coe, of Austin, and Kemper, Hicks & Cramer, of Houston, for defendant in error.

GRAVES, Justice.

Foxworth sued Murph for a rescission and cancellation of a contract of sale between them, dated March 4, 1932, whereby the former agreed to buy from the latter a one-half undivided interest in the Purity Ice Cream Company of Goose Creek in Harris county—inclusive of its merchandise, equipment, and good will—at an agreed purchase price of $3,000, of which one-half had been paid in cash and the other one-half evidenced by fifteen $100 notes; also a subsequent agreement whereby Foxworth likewise gave Murph six $100 notes as representing one-half of the purchase price of some additional machinery. The declared upon cause of action for a rescission and cancellation was based upon elaborately stated allegations of false and fraudulent representations alleged to have been knowingly made at the time by Murph for the purpose of inducing Foxworth to enter into the agreement, it being likewise charged that the latter relied upon them exclusively, would not have made the agreement if he had not, and that they misled, deceived, and visited actual damage upon him to the estimated extent of $4,000.

Murph answered by general demurrer, general denial, and a special defense to the effect that, if the statements so alleged to have been made by him were false as represented, they related to matters of opinion upon future events and not upon present or past ones, that there had been no fiduciary relations between the parties, and that he (Murph) neither concealed, nor made effort to conceal, any of the facts from Foxworth, and that all transactions and things complained of were equally open to them both; hence there could have been no actionable fraud in them.

The fact issues thus raised were submitted in great detail to a jury upon special issues, all of which were answered in Foxworth's favor, a finding under one of them being that the value of the one-half interest in the business at the time of the purchase had in fact been only one-half of what Foxworth had so agreed to pay for it; the trial court, upon this special verdict and the law and facts as found by it,

entered judgment in Foxworth's favor, decreeing the cancellation and annullment of the entire transaction, inclusive of the two series of $100 notes aggregating $2,100, that he recover from Murph $1,500, with interest thereon from March 7, 1932, and that Murph recover nothing upon his cross-action.

The appeal challenges the action so taken below upon a number of assignments and propositions, all of which are found to be merely abstract statements of law—without concrete application to this controversy—which are not entitled to consideration at this court's hands; however, if they were considered, it is thought that none of them require a reversal of the judgment rendered.

In the first place, while, as stated, the findings of the jury went into all of the details of the alleged fraudulent representations, determining each and all of them in Foxworth's favor, there is no assignment nor proposition in the record challenging the sufficiency of the evidence to support any one of such findings, wherefore they must stand in this court as established facts; it is plain, however, that the appeal first undertakes to show that there were no legally sufficient averments below to constitute actionable fraud, and to this end a part only of the declared upon representations are quoted in the brief; but, when these averments are looked to in full, it seems plain to this court that they furnish ample basis under the verdict for the judgment rendered; while it is not deemed necessary, this résumé of them shows their major features:

"Defendant represented to plaintiff that he had been engaged in manufacturing and selling ice cream for a period of two years in the City of Goose Creek. That the profits accruing to plaintiff from conducting the business of which plaintiff was buying a one-half interest would be sufficient to pay the $100.00 installments on said notes as they became due. That the profits from said business during the season of 1932 would be sufficient, not only to pay the $100.00 installments each month as they matured, but also would be sufficient to reimburse plaintiff for the whole amount of money that he·was to place in said business; that Murph before or at the time of the purchase by Foxworth of a one-half interest in the Purity Company represented to plaintiff that Murph could get the wholesale business in the Tri-cities if he was financially able to handle it, and that he would be financially able to handle it with the additional capital that plaintiff was putting into the business; that there was no competition in the Tri-cities to fear in the sale of ice cream; and that the San Jacinto Creamery was not doing enough ice-cream business to consider; that plaintiff relied upon such representations, and as a result of such false and fraudulent representations so made by the defendant, paid the sum of $1,500.00 in cash, and executed said note in the sum of $1,500.00. With reference to the execution of the $600.00 note, it is alleged that plaintiff executed a note in the sum of $600.00, relying upon the representations made by the defendant aforesaid, which defendant reiterated at the time of the purchase of the said additional equipment, and plaintiff consented to the purchase of said frigidaire equipment upon the representations aforesaid and upon the representations made by the defendant at the time of the purchase of said equipment, that same was necessary in the business, and that by the purchasing of same the Purity Company would be able to secure an additional amount of business in the nature of retail trade, to where the profits made from the operation of said business would take care of the expense and outlay in the purchase of same. That as aforesaid, all of the representations made by the defendant to plaintiff were false. That said representations were wilfully and fraudulently made by the defendant, the defendant knowing them to be false, and were made for the purpose of misleading plaintiff into entering into said partnership agreement.

"That plaintiff relied explicitly upon the representations made by the defendant. That plaintiff, relying upon statements and representations of the defendant, consented to the purchase of said equipment."

These averments, without reciting the great detail to which they were extended, stated a proper basis for actionable fraud within the rules announced by these authorities: Russell v. Industrial Transportation Co., 113 Tex. 441, 449, 251 S.W. 1034, 1037, 258 S.W. 462, 51 A.L.R. 1; Downes v. Self, 28 Tex.Civ. 356, 67 S.W. 897, 900; 20 Cyc. 62 (d); Edward Thompson Company v. Sawyers, 111 Tex. 374, 378, 234 S.W. 873, 874; 26 C.J. 1233; 14 C.J. § 879; 12 R.C.L. § 16, p. 248; Texas Co-operative Investment Co. v.

Clark (Tex.Civ.App.) 216 S.W. 220; Montgomery So. Ry. Co. v. Matthews, 77 Ala. 357, 54 Am.Rep. 60; 20 Texas Jurisprudence, §§ 31–34, inclusive, and footnote cited authorities.

And under the detailed findings of the jury that they were made for the purpose of inducing the contract, that they were false and so known to be when made, that they were relied upon by Foxworth, and did induce the contract to his injury, they were nevertheless so actionable despite the fact that in their reaches some of them were forward looking, in that they constituted promises for future returns. Our Supreme Court in the Russell Case, supra, thus disposes of that feature:

"But a party may become liable for false representations made in the form of promises for future returns. If the representations relied on by plaintiff and found by the jury to have been made for that purpose were merely opinions, or promises, yet if they were known to be false by the agents when they made them, and were made for the purpose of deceiving plaintiff and inducing him to make the contract, they were nevertheless actionable, having been relied upon by plaintiff. This proposition has been often stated and approved in the opinions of this court, but we cite only the following authorities:

"The Supreme Court, speaking through Justice Greenwood, in the case of Edward Thompson Company v. Sawyers, 111 Tex. 374, 378, 234 S.W. 873, 874, say:

"'Promises made without intention of fulfillment, in order to induce others to make contracts, are as culpable and as harmful as are willful misrepresentations of existing facts. Hence contracts may be avoided alike for such fraudulent promises and for such misrepresentations.'"

▇ It is further insisted for a reversal—while, as stated, no attack has been made upon contrary findings of the jury—that the evidence showed Foxworth not to have been damaged at all, in that he had been paid out of profits of the business during the five months he was connected therewith, from March to August of 1932, $644.54, $50 of which had been paid him as profits for the last week of that period; neither, it is thought, does this circumstance undermine the verdict and judgment rendered, for the reason that it was otherwise shown and found that Foxworth worked continuously and effectively for the Purity Company throughout these five months, devoting his entire time and attention thereto, and that the sum so paid him amounted to a monthly average of only $129, which was clearly not in excess of a reasonable compensation for his services for the five months' time; having, as the jury found, been induced ab initio into the business by the fraud of the other party thereto, he was in equity not only entitled to retain the sum so drawn from the business by him, but, it having been no more than reasonable compensation for the services he had rendered the business, he was not required to return it as a condition precedent to the rescission of the fraudulent contract he declared upon; in other words, without both such cancellation and the retention of fair pay for his services to the business during the time he had worked therein as the consequence of the fraud, could he have been made whole; these authorities uphold the declaration here made upon this subject: 7 Texas Jurisprudence, § 47, p. 962; State v. Snyder, 66 Tex. 687, 18 S.W. 106; Cearley v. May, 106 Tex. 442, 167 S.W. 725; Gantt v. McClellan (Tex.Civ. App.) 252 S.W. 229; Grundy v. Greene (Tex.Civ.App.) 207 S.W. 964; 20 Texas Jurisprudence, § 83, p. 123; Chambers v. Wyatt (Tex.Civ.App.) 151 S.W. 864; Williams v. Wright, 20 Tex. 499, 500.

In applying the principles declared in these cases to the one at bar, it should be noted here that both the pleading and proof and finding of the jury thereon show that in this instance Murph had already repossessed himself of the one-half interest in the business he had so contracted to sell to Foxworth, without the latter's consent, wherefore the seemingly contrary rule of law asserted in support of this appeal to be applicable here, as announced in Maverick v. Perez (Tex.Com. App.) 228 S.W. 148, is wholly inapplicable to the facts developed in this case; neither does the opinion of the Court of Civil Appeals in May v. Cearley, 138 S.W. 165, likewise relied upon for a contrary holding, furnish any such authority, because the Supreme Court reversed that judgment in Cearley v. May, 106 Tex. 442, 167 S.W. 725, 726, and in so doing said: "On proof of the fraud they were entitled to a cancellation of the deed. But, in seeking such a cancellation, a party is under no obligation to return, or offer to return, that which he is entitled to retain."

The rule applicable here—that is, where a party seeking cancellation of the transaction for fraud was shown to have been entitled to retain what he had received—is further stated in 7 Texas Jurisprudence, p. 962, § 47, and in State v. Snyder, 66 Tex. 687, 18 S.W. 106; 20 Texas Jurisprudence, p. 123, § 83, and Gantt v. McClellan (Tex.Civ.App.) 252 S.W. 229.

Finally, it would seem that any right to complain on the appeal for the first time of Foxworth's failure to offer to return the sum so received by him from the business was waived by Murph's not having raised that contention in any manner in the trial court. 3 Texas Jurisprudence, § 574, p. 815; 33 Texas Jurisprudence, § 166, p. 612; Powell v. Rockow (Tex.Civ.App.) 58 S.W.(2d) 536; Williams v. Wright, 20 Tex. 499, 500.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; they require that the judgment of the learned trial court be affirmed, and it will accordingly be so ordered.

Affirmed.