No. 2278.

J. TELFENER ET AL *v.* W. W. DILLARD ET AL.

1. TENANT IN COMMON—PLEADING.—The right of a tenant in common to maintain an action in trespass to try title for the recovery of the entire property against a wrong doer, is not affected by the statute which requires the plaintiff in that form of action to state in his petition the interest which he claims in the property.

2. CAUSE OF ACTION—AMENDMENT.—If the facts set forth as the basis of recovery are the same in an original and in an amended petition,

though the relief prayed for in the amendment may be different, the cause of. action remains the same, and the defense if not valid against the original petition, will not prevail against the amendment. If a new party plaintiff is made after the 'filing of the original petition, limitation runs as to such party up to the date of his making himself a party.

3. Stale Demand.—The doctrine of stale demand has no application to a legal title. It has no application to the claims of the true owner of land when set up by one claiming the land under a tax deed when no compliance with the steps prerequisite to its validity is shown.

4. Tax Title—Presumption.—Even after the lapse of forty years, no presumption will be indulged that the laws regulating the assessment and sale of land for taxes have been complied with so as to supply the missing evidence of power in the officer to make the sale.

5. Same.—One claiming land under a tax sale made under the act of 1840 must aver and prove compliance on the part of the officer who executed the deed with all the essential requisites of the law, for a valid tax sale.

6. Limitation.—A claimant under such a deed recorded, who fails to show a compliance with the law in those steps prerequisite to its validity, can not obtain title under the three years statute of limitations.

Appeal from Wharton.     Tried below before the Hon. W. H. Burkhart.

This suit was brought by the appellees against J. Telfener and others. Telfener claimed under a tax deed. The character of his title is apparent from the opinion. Judgment against Telfener and his co-defendants for the land and for damages against Telfener for one thousand two hundred and eighty-five dollars and seventy-one cents.

*A. B. Peticolas* and *W. W. King*, for appellants: When, by the original petition, only three of the seven heirs sue and seek to recover the whole land, and three years after the other four heirs come in and make themselves parties, and the statutes of limitation is shown to be a good defense as to those who came into the suit last, although not good as to the three who first sued, then the necessity for stating the interest of each heir becomes apparent. (Rev. Stats., art. 4786; Stovall v. Carmichael, 52 Texas, 384; Read v. Allen, 56 Texas, 176–182.)

When a person to whom lands have been granted in 1830 leaves the State in 1832, not having lived on the land three years, and never during his life-time after leaving asserts in any way any title to the land, and his heirs also fail to make any claim from the date of his death in August, 1850, to 1883—pay

no taxes after they came into possession, and assert no title in any way, and the land is sold by sheriff under execution in 1842 for taxes; and passes from hand to hand by a regular chain of title duly recorded from 1842 to 1883, without any assertion of adverse title by any one during all that time, and there is actual possession taken under this title for a length of time before any claim is set up by the heirs of the original grantee—in such a case, the doctrine of laches and stale demand applies in full force, and such laches operate as an equitable estoppel upon the plaintiffs, and prohibits them from now disturbing those in the possession and enjoyment of that which they have so long abandoned. (Haskins v. Wallett, 63 Texas, 214–220; McMaster v. Mills, 30 Texas, 591–595; Carlisle v. Hart, 27 Texas, 350; Hines v. Thorn, 57 Texas, 98–104; Hudson v. Jernigan, 39 Texas, 579; Power v. State, 41 Texas, 102–110.)

When an ancient deed is read in evidence, purporting to be made by authority of a power of attorney, or by authority of a law providing that certain things should be done before the deed is made, although no power of attorney is shown, and although there be no evidence that all the prerequisites of the law have been complied with, after the lapse of more than forty years, the court will conclusively presume in favor of such a deed that the power to make it did exist.

*E. Hawkes J. F. Cooper*, for appellees: A plaintiff may claim in his petition the whole of a tract of land and the entire damages thereto, and recover what the evidence proves to be his interest therein—his damages to be apportioned to him according to his interest as proven by the evidence on the trial. (Hutchins v. Bacon, 46 Texas, 414, and cases cited; Contreras v. Haynes, 61 Texas, 104–106; Sowers v. Peterson, 59 Texas, 216, as to apportionment of damages on trial; Mays v. Slade, 24 Texas, 209; E. R. Co. v. Knapp, 51 Texas. 577, 593.)

That the cause of action was the same, and limitation did not apply, they cited Western Union Telegraph Company v. J. H. Brown, 62 Texas, 536; Ball v. Britton, 58 Texas, 57.

The doctrine of laches and stale demand does not apply to a legal title. (Murphy v. Welder, 58 Texas, 241; Williams v. Conger, 49 Texas, 583; Satterwhite v. Rosser, 61 Texas, 172.)

MALTBIE, PRESIDING JUDGE. It is well settled that the Revised Statutes requiring that the petition in an action of trespass to

try title shall state the interest which the plaintiff claims, whether it be of fee or otherwise, and if he claim an undivided interest the amount thereof does not preclude one tenant in common from a recovery of the entire property against a wrongdoer, or one without title. (Sowers v. Peterson, 59 Texas, 217; Pilcher v. Kirk, 60 Texas, 162; Contreras v. Hughes, 61 Texas, 103.) In this case the several plaintiffs sue for the entire Dillard league, alleging that they owned it in fee, but they did not state how much each one claimed. Defendant excepted to the petition as amended, because it did not state the interest each plaintiff claimed in the league. The exception does not appear to have been called to the attention of the court until after the trial. There is no order or ruling of the court found in the record upon the subject. In such case the exception will be deemed to have been waived. The assignment of error in relation thereto can not be sustained.

2. The third amended petition did not set up a new cause of action; it made new parties, but did not change the form of action. The suit was a simple suit of trespass to try title from first to last. The only change made was to claim less damages for waste or conversion of timber and to claim rents. No rents were recovered, and though there may have been such a departure from the original suit, no injury was done to defendants, and they can not complain.

3. Several parties, plaintiff by amendments to the original petition were joined in the suit, all being heirs of the original grantee of the land. Appellants say the eighth paragraph of the court's charge was erroneous as to time when limitation was suspended by the filing of such suits, the third amended petition being a new cause of action. The charge instructed the jury in effect that the statute would run up to the time of the filing of plaintiff's respective suits; and in another paragraph the court instructs the jury to look to the original and subsequent petitions for the date suit was first filed in behalf of the various plaintiffs. The charge is not erroneous so far as we can see. The charge asked by defendants upon the subject assumes that the third amended petition was a new suit and set up a new cause of action for all the plaintiffs, and asked the benefit of limitation up to the time of filing of the amendment against all the plaintiffs. As before stated, the amendment set up no new cause of action and was not the commencement of suit except as to those who by the amendment for the first

time made themselves parties plaintiff. The court would have committed error if the charge asked by defendants had been given.

4. There was no error in refusing the instruction asked by defendants upon the subject of stale demand. The law of stale demand does not apply to the title of plaintiffs. It is not an equitable title. It has been repeatedly decided by the Supreme Court of this State that stale demand has no application to a legal title. Plaintiffs inherited the land from John J. Dillard, the original grantee. Neither they nor the Dillard estate was divested of the legal title by the tax deed of the sheriff unsupported by evidence that the tax laws in force at the time had been complied with. The legal title, after the tax deed was executed, nothing else being done towards a performance of the requirements of the law, authorizing the sale of the land by the collector of taxes, was left in the heirs of Dilliard. Immediately after the execution of the deed it could not be said that it of itself had the effect to put the legal title in Ross, the vendee; lapse of time merely could not create a legal title, or make of that a legal title which was not before.

The question then arises, would it be presumed after a lapse of forty years that the laws regulating the assessment and sale for taxes had been complied with, so as to supply the missing proof of the power in the officer to make the sale? We do not think it would. The maxim, *omnia presumunter rite esse acta*, does not apply to tax sales. It has been said that there are so few instances in which the law is strictly complied with that the presumption is the other way. (Waldron v. Tuttle, 3 N. H., 340.) It is difficult to see how such a presumption could be made easier by lapse of time.

The act of 1840, under which the deed in question was made, which declares that the deed of the sheriff shall be good and effectual in law and equity, has been construed by Chief Justice Hemphill, and it was held that the purchaser must allege and prove that all the essentials of the law were complied with. (Hadly v. Tankersly, 8 Texas, 17, 18.) There is no distinction to be made, then, in the deed in question and an ordinary tax collector's deed.

In New York it was held in the case of Westbrook v. Willey that mere lapse of time before the bringing of an action, where possession of defendant under the Comptroller's tax deed was not for sufficient length of time to bar an action under the

statute of limitation, would not justify the presumption that the requirements of the act had been complied with. In that case the deed was more than thirty years old, and possession under it some thirteen years before suit. The court say that had possession followed the deed for thirty years the rule would be different. (47 N. Y., 461.)

In Waldron v. Tuttle, 3 New Hampshire, 344, the deed was over forty years old, and the claimant had occasionally entered upon the premises. The court say: "A possession, to be the ground of any presumption in favor of such title, must be long open and undisturbed, and adverse to the title of the former owner; and we are of opinion that in no case can a jury be permitted to presume from the mere production of a collector's deed and from proof of possession under it that the sale was legal. The presumption is in fact against their validity. * * And in no case can the purchaser be permitted to rely upon possession as evidence, even of particular facts, until he has shown that the common and ordinary evidence of such facts has been probably lost by time and accident and is not to be found."

Greenleaf, in reference to sales by guardians, executors, administrators or other officers authorized to make sales of lands, says that lapse of time (in most cases thirty years) raises a conclusive presumption that all legal formalities of sale were observed," that is, that intermediate matters will be so presumed upon the maxim that the extremes being proved the *media* will be presumed; but he adds that "it (the sale) does not extend to records and public documents which are supposed always to remain in the custody of the officers charged with their preservation, and which therefore must be proved or their loss accounted for, and supplied by secondary evidence."

The Supreme Court of California in Keane v. Connovan, 21 California, 300, 301, in commenting upon the principle laid down in Greenleaf, say that the presumption of the power of sale by the Treasurer (a tax sale) could only be indulged in favor of the acts between assessment and the execution of the tax deed, and none could be indulged in favor of the assessment itself which is the foundation of all subsequent proceedings."

The act of 1840, under which the sale in the case at bar purported to have been made, required the assessor to make three certified copies of the tax lists—one for the secretary of the treasurer, one for the sheriff, and one to be posted in the court

house. The sheriff was required to give notices and collect the taxes, and make return to the secretary of the treasurer. The secretary of the treasurer was required to have made a list of delinquents, certified to, send the same to the sheriff, who was required to deliver it to the clerk of the district court, and the clerk, on receiving the list, was to issue execution against the property of such delinquents, to be levied by the sheriff, etc. (Hartley's Digest, arts. 2992 to 2994, inclusive.)

It is apparent from the foregoing that the evidence of assessment of taxes against the Dillard estate, as well as other intermediate requirements of the law, including the execution, may have been found in the departments, State and county, where they were required to be kept. If they were not to be so found, proof of loss and search could have been made. Under the authorities above cited the sheriff's tax deed was certainly not admissible to prove a legal sale of the land in controversy until proof of such facts as would be presumed to be in the custody of officers and departments charged with their keeping, or if they were lost such loss could have been shown and secondary evidence offered if obtainable. Count Telfener's deed was executed on the twenty-eighth day of December, 1881; his entry upon the land earlier than that could not be invoked to aid the deed. His possession under the deed could not begin before the deed was executed. He built the road as generally constructed, and operated it until in 1884, when he delivered it to the company, the New York, Texas & Mexican Railway Company, for whom it was built. He had timber cut off of the league in the fall and winter of 1881, but such an entry, if it could be called possession at all, could not aid the deed until it was executed. In 1882 he had large quantities of timber cut, and also in 1884, up to the time he delivered the road to the company. We do not think such possession sufficient to give validity to the tax deed under which he claimed, notwithstanding it was over forty years old at the time the suit was instituted. The deed was old enough, but there was no possession under it for nearly forty years after it was executed. We do not intend to say what length of time, accompanied with possession, would give sanctity to a tax deed so that it would per se convey the title of the delinquent tax payer. We only intend to say that the circumstances of this case and the antiquity of the deed

would not relieve the purchaser or his vendee from the necessity of proving the facts ordinarily required to establish the validity of such a deed.

Claiming under a tax deed without proof of compliance with the law demanded in case of tax titles, Telfener can not hold the land or any part of it under the three years statute of limitation. His possession did not continue for five years, and consequently can not hold the land under the five years statute of limitation. The railroad company had no deed to the land or the right of way from any one, and it is not shown that the company had any connection with Telfener's possession. He constructed the road for the company in the capacity, so far as we can learn from the evidence, as general constructor, and he was a principal stockholder. His relation to the New York, Texas & Mexican Railway company is left in doubt by the evidence. If he was the company, the fact should have been proved. We conclude from the evidence that his position was that of constructor for the company. The railway company had no pretense of title or even deed to the right of way; if it could tack its possession to that of Telfener without deed, nothing less than ten years would give it title to the easement by possession. We can not say there was any possession on the part of Telfener or the company sufficient to recover the land or any part of it under the statute of limitations pleaded, and we can see no reason why the verdict of the jury should be set aside.

Defendants were mere trespassers, and plaintiffs, being tenants in common with another or other part owners, could recover the entire estate against such trespassers. Plaintiffs' title is a legal title, and stale demand does not apply to it. The tax deed under which defendants claim does not of itself confer title; it is not color of title so as to admit of protection under the three years statute of limitation. And there has not been five years' possession under deed or deeds duly registered either by Telfener or the railroad. There is no title, then, in the defendants of any kind, and failing to discover any material error in the charge of the court or other error complained of, we conclude the judgment ought to be affirmed, and so report the case.

*Affirmed.*

Opinion adopted February 28, 1888.