WARNOCK v. MILLS. (No. 752—4704.)

(Commission of Appeals of Texas, Section B. Feb. 23, 1927.)

1. Limitation of actions ⬤�longdash124—Amending petition to allege liability of additional defendant held not to set up new cause of action, bringing original defendant within limitation.

Where amended petition, in suit to recover under alleged contract of employment, did not change material allegations in original petition, only addition being to allege liability of additional defendant, the amended petition did not set up a new cause of action so as to bring original defendant within statute of limitations.

2. Limitation of actions ⬤⟷124—Mere addition of party defendant does not set up new cause of action against original defendant, against whom original petition tolls statute.

Mere addition of party defendant does not, standing alone, set up a new cause of action against original defendant, and filing of original pleading tolls statute of limitations as to original defendant.

3. Pleading ⬤⟷248(2)—Cause of action under amended pleading, retaining substantially same cause of action, is not new, either in contract or tort.

Where amended pleading retains substantially same cause of action as original pleading, cause of action is not new, either in contract or tort.

4. Trial ⬤⟷350(4)—Failure to present issue, raised by defendant, of separate liability on employment contract as against plaintiff's theory of employment by partnership held error.

Where defendant, in suit on contract of employment to operate farms of defendant and another, raised issue as to her liability for percentage in accordance with contract only as to crops grown on her own land, as against plaintiff's theory of employment by partnership, failure to present such issue to jury *held* error.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by R. M. Warnock against Mrs. Love Webb Mills and another. Judgment for plaintiff against defendant named was reversed and rendered by the Court of Civil Appeals (284 S. W. 676), and plaintiff brings error. Judgments of district court and Court of Civil Appeals reversed, and cause remanded to the former for a new trial.

Joe Montague, of Ft. Stockton, Brian Montague, of Del Rio, R. D. Blaydes, of Ft. Stockton, and Kemp & Nagle, of El Paso, for plaintiff in error.

W. A. Wright, of San Angelo, Howell Johnson, of Ft. Stockton, and McKenzie & Loose, of El Paso, for defendant in error.

POWELL, P. J. The opinion of the Court of Civil Appeals fully states the nature and result of this case. See 284 S. W. 676. Plaintiff in error, in the petition for the writ, summarizes the case as follows:

"This was a civil suit, brought in the district court of Pecos county, Tex., by R. M. Warnock, plaintiff in said district court, the original petition being filed in said district court on February 19, 1923, the only defendant in said suit as originally filed being the said Mrs. Love Webb Mills, defendant in error herein, and in said original petition the plaintiff sought to recover of the said defendant the sum of $2,200, being 10 per cent. of the value of a certain crop alleged to be due the plaintiff under a contract of employment with the defendant, and in said petition the plaintiff alleged that 'on or about the 1st day of October, 1920, the defendant, being then and there the owner of a large farm

near the city of Ft. Stockton, in Pecos county. Tex., employed the plaintiff to manage and operate said farm for a term of 12 months beginning October 1, 1920, and terminating October 1, 1921; that in consideration of the services to be performed by the plaintiff in his capacity as manager and foreman of said farm, the defendant then and there contracted and agreed to pay him for the term of said employment a salary of $300 per month, payable monthly as it accrued, and in addition thereto 10 per cent. of the value of all crops and produce to be raised on said farm during said term.'

"On November 1, 1924, the plaintiff filed his first amended original petition in which he joined Robert D. Webb as party defendant, in which amended petition it was alleged that 'in this connection (plaintiff) alleges that said R. D. Webb, at all times hereinafter complained of, was part owner of the lands covered by the contract of employment hereinafter complained of, and further alleges that as part owner he is equally liable with his codefendant to plaintiff under the contract of employment hereinafter alleged. That heretofore, to wit, on or about the 1st day of October, 1920, the defendants, being then and there the owner of a large farm near the city of Ft. Stockton, in Pecos county, Tex., employed the plaintiff to manage and operate said farm for a term of 12 months beginning October 1, 1920, and terminating October 1, 1921; that in consideration of the services to be performed by the plaintiff in his capacity as manager and foreman of said farm, the defendants then and there contracted and agreed to pay him for the term of said employment a salary of $300 per month, payable monthly as it accrued, and in addition thereto 10 per cent. of the value of all crops, and produce to be raised on said place during said term.'

"In both the original and amended petitions above referred to it was admitted that the plaintiff had been paid the monthly salary, but in both petitions it was alleged that the crop raised on said premises for the year 1921 was of the value of $22,000, and plaintiff sued for 10 per cent. of the value of said crop. Both of the defendants, amongst other defenses, pleaded the statute of limitations, and the peremptory instruction was given in favor of the defendant Webb upon the theory that as to him the suit was barred by the two years' statute of limitations. The case as to Mrs. Mills was submitted on special issues, in response to which the jury found that the contract was that Mrs. Mills agreed with the plaintiff, Warnock, that he should receive as part of his compensation as the manager of the farms of both defendants for the year beginning October 1, 1920, and ending October 1, 1921, 10 per cent. of the value of the crops produced on the defendants' farms during said year, and that the value of such crops was $22,000. The defendant Mrs. Mills asked for a peremptory instruction in her favor on the ground that more than two years had elapsed after the cause of action arose before the first amended original petition was filed, which instruction was refused by the court. The court, on the verdict of the jury, entered judgment for the plaintiff against the defendant Mrs. Mills for $2,200, with interest thereon at 6 per cent. from October 1, 1921, and also entered judgment in favor of the defendant Webb.

"The Court of Civil Appeals on May 13, 1926, reversed and rendered the case in favor of the defendant Mrs. Mills, holding that the amended petition set up a new cause of action and that it was barred by limitation. The appellee, Warnock, plaintiff in error herein, in due time, to wit, on May 27, 1926, filed his motion for a rehearing, complaining of all of the errors herein complained of, which motion for a rehearing was by the Court of Civil Appeals overruled on June 3, 1926."

The first assignment of error in the application, submitted as a proposition, read as follows:

"The Court of Civil Appeals erred in holding that the amended petition set up a new cause of action."

[1] We think this assignment must be sustained. As stated by counsel for plaintiff in error here, it is apparent from the record before us:

"That the amended petition did not in any material respect change the allegations contained in the original petition in so far as they affect the liability of the defendant, Mrs. Mills, or the rights of the plaintiff against her. It did not, as suggested by the appellants' counsel in her brief, involve any other farms or any other crops than those covered by the original petition. The only addition was the allegation that by reason of an ownership in the land in question, or some interest therein, the additional defendant Dr. Webb was liable equally with the defendant Mrs. Mills."

In other words, each petition related to the same subject-matter. The amount of money sought in each petition was the same. The only effect of the amendment was to hold Dr. Webb jointly liable. Recovery could have been had, so far as the allegations therein are concerned, under either petition, against Mrs. Mills for the full amount sued for. She was in possession of those alleged partnership farms and managing them. She had the right to employ an overseer. The one question involved in this assignment is whether or not the effort to hold Dr. Webb jointly liable had the effect of stating a new cause of action against Mrs. Mills also. In other words, does the mere addition of a defendant so essentially change a cause of action as to the original defendant as to constitute it a new cause of action against the latter?

We think not, where, as in the case at bar, the nature of the demand against both is the same as against the one, and where the subject-matter is identical. In this case, Mrs. Mills was liable for the entire amount sued for anyway, if the allegations of either petition be true. Her liability to the plaintiff was not increased by the amended petition. Warnock may suffer, of course, by not being able to have a judgment against Dr. Webb also, but his own delay accounts for such a situation.

That our conclusions, just stated, are correct, is shown by the following quotation from an opinion of our Supreme Court in the case of Thompson v. Swearengin, 48 Tex. 555:

"The other ground is not, to my mind, so entirely void of force; and if the court was controlled in matters of this kind by the technical rules of the common law, it may be that this objection would warrant the judgment. Unquestionably the original petition, if it does not distinctly aver, certainly implies that the account declared upon was contracted with the plaintiffs J. W. and Cyrus Thompson, as partners, doing business in the firm name of A. B. Thompson & Co.; while the amended petition alleges that it was contracted with A. B., J. W., and Cyrus Thompson, as partners, under the like firm name. A variance of this character, between the contract described in the petition and that offered in evidence, has frequently been held fatal. Chitty's Pl. 306; 4 B. & A. 274. But evidently the correction, by amendment, of any misdescription that would be fatal on an objection for variance between the allegata and probata, cannot be held to be a new suit. And while there are decisions of this court that tend strongly to support the objection (Henderson v. Kissam, 8 Tex. 46; Whitehead v. Herron, 15 Tex. 127 [65 Am. Dec. 145]), the contrary seems to have been directly decided in the case of Pridgen v. McLean, 12 Tex. 420, and to be maintained by other later decisions (Williams v. Huling, 43 Tex. 113; McIlhenny v. Lee, 43 Tex. 205; Lee v. Boutwell, 44 Tex. 151; Kendall v. Riley, 45 Tex. 20). Both the original and amended petition alleged that the account was made with A. B. Thompson & Co. It was properly verified, and presented to the administrator as an account due that firm. It was payable to the plaintiffs, and they alone were authorized to bring suit upon it when the original petition was filed. The amended petition did not declare upon a different account, or allege a liability on it to different parties, but corrected the statement in the original petition, in regard to the parties composing the firm of A. B. Thompson & Co., with whom it was contracted. By this change, we hold, under the authority of the previous decisions of this court, it cannot be said that a different cause of action from that presented by the original petition is set up."

In aforesaid quotation, Justice Moore referred to the case of Pridgen v. McLean, 12 Tex. 420. We quote from the syllabus in the case as follows:

"Where certain persons sue as partners doing business under a certain name and style, it seems that an amendment which strikes out one of the plaintiffs, is not such an amendment as entitles the defendant to claim the benefit of the statute of limitations to the date of the amendment."

In the later case of Telfener v. Dillard, 70 Tex. 142, 7 S. W. 849, our Supreme Court said:

"2. The third amended petition did not set up a new cause of action; it made new parties, but did not change the form of action. The suit was a simple suit of trespass to try title from first to last. The only change made was to claim less damages for waste or conversion of timber and to claim rents. No rents were recovered, and though there may have been such a departure from the original suit, no injury was done to defendants, and they cannot complain.

"3. Several parties, plaintiff by amendments to the original petition, were joined in the suit, all being heirs of the original grantee of the land. Appellants say the eighth paragraph of the court's charge was erroneous as to time when limitation was suspended by the filing of such suits, the third amended petition being a new cause of action. The charge instructed the jury in effect that the statute would run up to the time of the filing of plaintiff's respective suits; and in another paragraph the court instructs the jury to look to the original and subsequent petitions for the date suit was first filed in behalf of the various plaintiffs. The charge is not erroneous so far as we can see. The charge asked by defendants upon the subject assumes that the third amended petition was a new suit and set up a new cause of action for all the plaintiffs, and asked the benefit of limitation up to the time of filing of the amendment against all the plaintiffs. As before stated, the amendment set up no new cause of action and was not the commencement of suit except as to those who by the amendment for the first time made themselves parties plaintiff. The court would have committed error if the charge asked by defendants had been given."

In the case of Railway Co. v. Watson, 72 Tex. 633, 10 S. W. 731, a plaintiff was dropped in the amended petition. But Chief Justice Stayton holds that no new cause of action was stated. To the same general effect is the case of Baker v. Railway Co. (Tex. Civ. App.) 184 S. W. 258.

[2] So it is clearly seen that the uniform holding of our Supreme Court is to the effect that the mere addition or elimination of a party plaintiff does not set up a new cause of action against a defendant. For the same reason, we think the mere addition of a party defendant does not, standing alone, set up a new cause of action against the original defendant. If the liability of the original defendant is in no wise enlarged by the addition of a new defendant, then the cause of action, as pleaded in the amended petition, is not essentially or materially different from that in the original pleading so far as the original defendant is concerned. This is the material test as laid down by what might be termed the stricter of the authorities upon this point. And, in such a situation, the filing of the original pleading tolls the statute of limitations as to the original defendant.

In the case of Fuller v. El Paso Times Co. (Tex. Com. App.) 236 S. W. 455, this court, speaking through the writer of this opinion, went fully into the question of when a new cause of action is stated. In the instant case, the Court of Civil Appeals states that if

our entire opinion in the Fuller Case is the law, then no new cause of action in the case at bar was pleaded as against Mrs. Mills. But the Court of Civil Appeals says that our holding in the Fuller Case was not approved by the Supreme Court, and it did not feel bound by it. It is not necessary, in the instant case, to go as far as some of our statements in the Fuller Case. We have already cited Supreme Court cases which, in our judgment, establish the error of the Court of Civil Appeals in the case at bar. But we have carefully reviewed our opinion in the Fuller Case and find that we cited authority for each proposition there advanced. The Court of Civil Appeals seems to doubt the correctness of the following proposition, announced by us in the Fuller Case:

"Under our law, as said by Justice Stayton in case of State v. Snyder, 66 Tex. 687, 18 S. W. 106, an amended pleading which merely abandons a part of a cause of action set up in the original petition does not set up a new cause of action. It is only essential that the amended pleading, upon which the trial was had, was not substantially different from some portion of the former pleading. If each of the amended petitions herein contained, even as part of the cause of action therein asserted, substantially similar allegations, there was no new cause of action. This is well settled by our Supreme Court in the case of Bigham v. Talbot, 63 Tex. 271."

In written argument here, counsel for defendant in error admit that we were justified in aforesaid pronouncement, but state that it was obiter dicta. Whether obiter or not, we do not say, but our Supreme Court, in the case of Bigham v. Talbot, supra, said:

"That there are distinct causes of action would seem to admit of no question whatever. If, however, there had been any allegations in the first amended petition in any way retaining, even as part of the cause of action therein asserted, that which was asserted by the original petition, and afterwards reasserted by the second amended petition, that would have been sufficient to prevent the running of the statute after the original petition was filed."

If such an expression was obiter in that case, it has been announced as the law in other cases by that court. The liberal rule there announced has been repeatedly followed by our courts.

[3] In oral argument, counsel for defendant in error admitted that the rules we announced in the Fuller Case were correct as related to tort actions, but not as to contract cases. We find no room for such distinction in the great majority of our Texas cases. In the Fuller Case, we cited many contract cases. We think there is no such distinction. The basis of a contract suit are the terms of the contract. The basis of a negligence case is the act or acts of negligence alleged. Without negligence, there is no case. In any kind of case, contract or tort, the cause of action is not new where the amended pleading retains substantially the same cause of action as in the original pleading.

As already stated, it is not necessary for us to approve, in the instant case, all the propositions we advanced in the Fuller Case. We have gone this far by way of defense of our holdings in that case. The Court of Civil Appeals bases its opinion in the instant case mainly upon three decisions by our Supreme Court: Railway Co. v. Scott, 75 Tex. 84, 12 S. W. 995; Lumber Co. v. Water Co., 94 Tex. 456, 61 S. W. 707; Cotton v. Rand, 93 Tex. 7, 51 S. W. 838, 53 S. W. 343. We think these cases readily distinguishable from the case at bar.

In the case of Railway Co. v. Scott, the cause of action was essentially different. The first appeal of the case is reported in 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758. Chief Justice Stayton reversed the case. He spoke, in part, as follows:

"We must take the contract as alleged in the petition to be the contract on which appellee must recover, if at all; and looking to that, there can be no doubt that whether appellee should serve appellant and the term of such service depended upon his own will.

"It is very generally if not uniformly held, when the term of service is left to the discretion of either party, or the term left indefinite or determinable by either party, that either may put an end to it at will and so without cause. Harper v. Hassard, 113 Mass. 187; Coffin v. [Landis] Landes, 46 Pa. St. 431; Wood, Master and Servant, secs. 133, 136, and citations.

"When such a state of agreement exists it is no breach of contract to refuse to receive further services; and the refusal to accept any at all it would seem at most would entitle the engaged servant only to nominal damages."

When the case was remanded, the pleading was amended to meet this ruling by the Supreme Court. In the second appeal, 75 Tex. 84, 12 S. W. 995, Justice Henry says the amendment set up an "essentially different contract." He said the only similarity was that the parties and the consideration for the execution of the contract were the same. It is clear that the term and duration of the employment, the chief and all important part of the cause of action, was entirely changed.

In the case of Lumber Co. v. Water Co., the cause of action was so changed as to be based upon legal or tort liability, rather than upon contract. Of course, that was an essential change.

In the case of Cotton v. Rand, supra, the petitions involved a contract, not only with different parties, but with a different subject-matter.

None of the cases relied upon by the Court of Civil Appeals presented a situation analogous to the case at bar, as we interpret them. On the contrary, we have cited cases by our

Supreme Court on the very same kind of fact issue, except that the parties added or eliminated in the new pleading were plaintiffs, and not defendants. We think that makes no difference where the liability of the original defendant was not changed by the new pleading. In this connection, it is interesting to recall that our decisions rather uniformly hold that the mere changing of the measure of damages in a case does not constitute a pleading a new cause of action. But not even this has been done in the instant case. Each of these partners was liable for the entire amount of this debt.

In what we have already said in this opinion, we hold but one thing, and that is that the Court of Civil Appeals erred in concluding that the amended pleading set up a new cause of action as to Mrs. Mills, and that the claim against her was therefore barred by limitation.

In the Court of Civil Appeals, Mrs. Mills, appellant there, presented numerous assignments of error. The Court of Civil Appeals pretermitted a discussion of all except the one we have discussed. In the view we take of the one point it did decide, it now becomes necessary to consider the remaining assignments in that court.

As we have already shown in our opinion, the theory of Warnock was that he was employed by a partnership to manage a partnership farm and its partnership operation, and that each defendant was liable for the whole amount sued for. On the other hand, as shown by the pleadings of the defendants in the trial court, it was their theory that there were no partnership lands nor partnership crops. It was pleaded that Mrs. Mills acted only as the agent for Dr. Webb, her brother, in employing Warnock and that the doctor alone was to pay him. It was a further theory that, considered most favorably to Warnock, the farms were separately owned and separately operated, each owner taking the crops grown on his or her land, and each being charged with definite or proportionate expenses of operation.

Under the latter theory of defendants, Mrs. Mills was not liable for any more than 10 per cent. of the crops grown on her land, and Dr. Webb alone would be liable to Warnock, if any one was, for 10 per cent. of the products grown on the Webb land.

[4] There was abundant testimony raising this issue. We have read the statement of facts in this connection. But no such issue was submitted to the jury on this phase of the case. The recovery herein covered only the year beginning October 1, 1920. The agreed salary had admittedly been paid. The controversy for that year related only to the 10 per cent. commission on the crops. The only two issues submitted with reference to the $2,200 recovered by Warnock in this case were as follows:

"Special Issue No. 1: Did the defendant Mrs. Love Webb Mills, agree with the plaintiff, R. M. Warnock, that he, the plaintiff, R. M. Warnock, should receive as a part of his compensations as manager of the farms of both defendants for the year beginning October 1, 1920, to October 1, 1921, 10 per cent. of the value of the crops produced on defendants' farms during said period? Answer Yes or No. (Answer). Yes.

"If you have answered the foregoing special issue No. 1 in the affirmative, then answer the following:

"Special Issue No. 2: What was the value of the crops produced from the farms of both defendants during the year beginning October 1, 1920, and ending October 1, 1921? Answer in dollars and cents. (Answer) $22,000."

Issue No. 1 did not ask the jury who was to pay this 10 per cent. commission. It merely asked if Warnock, under the agreement with Mrs. Mills, was to get from some one (Mrs. Mills or Dr. Webb) 10 per cent. of the value of the crops grown on the farms of both defendants.

To the giving of special issue No. 1 Mrs. Mills objected, among other reasons, because, under the facts in the record, "if any 10 per cent. was due to the plaintiff it could only be as to this defendant (Mrs. Mills), such proportionate part thereof as was produced on her individual farms."

The defendants in the trial court asked the submission of these special issues:

"No. 1: Do you find from the evidence that Mrs. Love Webb Mills and Dr. R. D. Webb paid separately for the expenses of running what is known as the Mills farm and the Mrs. Mills farm and the 7–D farm? Answer Yes or No.

"No. 2: Who paid the salary of the plaintiff, as manager of the Dr. R. D. Webb farm and the Mrs. Love Webb Mills farm for the year 1921, beginning October 1, 1920.

"If you have answered the foregoing and stated who paid such salary, then answer the following question:

"2a. Prior to September 1, 1921, did the plaintiff know who paid said salary, or could he have known the same by the use of such ordinary diligence as an ordinarily prudent person should observe? Answer Yes or No."

These charges were refused. Proper exception was reserved.

There was evidence in this record which would have authorized the jury to find that these farms were separately owned and operated and the expenses separately paid, and that, as arranged by his agent, Mrs. Mills, Dr. Webb paid all the salary of Warnock and would have been liable, under his agreement with Mrs. Mills, for 10 per cent. of the products on his farm. If the questions had been so answered, it would have necessarily materially reduced the judgment, because the $22,000 value of the crops covered the farms of both defendants.

It is clear to us that these all-important issues should have been submitted to the

jury. They were the chief controverted issues in the case as to the year here involved. For the refusal to submit these issues, we think the judgment of the district court must be reversed and the cause remanded.

As we view it, these are the only requested issues which were refused and which affected Mrs. Mills. So far as proposed issues may have affected Dr. Webb, they become immaterial because the claim against him was barred anyway.

We do not believe the questions raised in the other assignments in the Court of Civil Appeals will likely arise on another trial. Therefore we pretermit any discussion thereof.

For the one reason stated by us, the refusal of certain special issues, we recommend that the judgments of the district court and Court of Civil Appeals be reversed and the cause remanded to the former for a new trial.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.