**HULSEY et al. v. SMITH et al. (No. 1741.)\***

Court of Civil Appeals of Texas. Beaumont. Dec. 20, 1928.

Rehearing Denied Jan. 9, 1929.

Beall, Worsham, Rollins, Burford & Ryburn and Allen Charlton, all of Dallas, for appellants.

Leake, Henry, Wozencraft & Frank, of Dallas, for appellees.

WALKER, J. This suit was filed April 3, 1924, by appellants as plaintiffs against appellees as defendants, praying for judgment upon a personal demand. The trial was to a jury, and on conclusion of the evidence a verdict was instructed in favor of appellees. Appellants have duly prosecuted their appeal from the judgment entered against them on the verdict. Their propositions are to the effect that, since the evidence raised the issues pleaded by them as a ground of recovery, the court erred in instructing a verdict against them, and the court erred in striking out their second trial amendment filed under an order of the court to cure a variance between

the allegations of the second amended original petition as to the parties to the contract upon which the suit was based. By their original petition appellants alleged that they and defendants and certain other parties entered into a contract to form a corporation to operate a mine in Newton county, Mo. The defendants controlled a mineral lease upon the property and had begun the sinking of a mine shaft. Plaintiffs were to take over the work, pay the expenses of sinking the shaft to an agreed depth, and, upon the organization of the corporation, to have a controlling interest therein. An agreed percentage of the capital stock of the corporation was to be held as treasury stock and sold as treasury stock to raise the necessary funds to operate the mine. The corporation was not able to sell this stock.

Appellants further alleged that, when it was found the treasury stock could not be sold, the stockholders agreed to abandon the corporation and to operate the mine as a partnership, and in carrying out this agreement the partnership incurred debts to a large amount. Finding the mine could not be operated profitably, the parties agreed to liquidate its assets and pay the debts due by the partnership in proportion to their stock holdings. Plaintiffs were to have charge of the liquidation, sell the assets, and, from their personal funds, pay the debts. Upon demand defendants were to repay to plaintiffs their proportional part of the debts paid by plaintiffs. Plaintiffs proceeded with their duties under the alleged agreement of partnership and liquidation, and paid all debts due by the partnership from their personal funds, and on September 25, 1923, presented to defendants a detailed, itemized statement showing what had been done by them and the amount of indebtedness paid by them, and demanded contribution from defendants and payment by them of the part due under the agreement, which defendants refused to pay. It was alleged that plaintiffs paid $14,622.18, and their prayer was for judgment against defendants for $3,847.84, with interest. Plaintiffs' original petition is very long, but the statement made fairly presents the issues raised thereby. On June 23, 1927, appellants filed their first amended original petition, and on September 26, 1927, a second amended original petition. These amended petitions in three counts replead, in substance, the same grounds of recovery as the original petition. The remaining count was, in effect, that the corporation had no funds with which to operate the mine; that the stockholders, realizing this, and that the treasury stock could not be sold, agreed that the corporation should borrow the necessary funds, and that plaintiffs and defendants, possibly with other stockholders, should sign the notes of the corporation, and, as between themselves, be

---

\*Writ of error granted.

liable thereon in proportion to their stock holdings; that this was done, the funds raised and expended for the benefit of the corporation; that when it became evident that the corporation could not be operated at a profit there was outstanding and unpaid on the indebtedness of the corporation the amount of $17,500. With this brief statement from the amended petitions, we quote as follows from the second amended original petition, upon which the case was tried:

"That during the year 1921 and after June 21st, and after said $17,500.00 of indebtedness as well as other debts were outstanding against said enterprise and against the stockholders of the Oriental Mining Company, who signed the same as joint maker, and if not as joint makers as indorsers and with the agreement among those signing that they would jointly pay off said indebtedness in proportion to their stock held in said company, it became evident that the business could not be carried on profitably and the expenses were growing rapidly, and that all the stockholders were not bearing their part of the expenses as expressly and impliedly agreed. At such time, it was agreed among the stockholders of said corporation and all of them, and it was especially agreed between the plaintiffs and defendants that the plaintiffs would liquidate the business of the Oriental Mining Company and would sell the assets belonging thereto and apply the same to the indebtedness of said corporation and to the indebtedness created individually by the stockholders and by those signing said notes, and that the plaintiffs would pay all of said indebtedness and wind up said business, and that defendants and stockholders of said corporation would pay to the plaintiffs their share of said indebtedness and would pay their share of such sums as would be paid out by the plaintiffs in the liquidation of said business and the discharge of the indebtedness of said Company, and especially that portion of said indebtedness which was owed by them on the aforesaid notes.

"Thereafter these plaintiffs began the liquidation of said business and, as said notes became due, borrowed the money and paid the same off, sold the assets and applied the same to the payment of the indebtedness of said corporation and wound up said business, completing the same during the year 1923. That the liquidation of said business was for the joint benefit of plaintiffs and defendants and other stockholders, and especially for the plaintiffs and defendants who were joint makers, or, in the alternative, indorsers for sureties upon said paper; that the plaintiffs and defendants are the only stockholders and persons liable on said paper who are solvent, and that all of the other former stockholders and parties on said paper are notoriously insolvent; that the plaintiffs wound up said business, as aforesaid, and paid off all of the indebtedness of same. That the excess of the indebtedness over the amount realized from the assets was $14,622.18, which sum was in full paid by these plaintiffs out of their own money and in accordance with the aforesaid agreement, and was paid in liquidation of the indebtedness evidenced by said notes owed by the defendants and plaintiffs and others jointly, and for the benefit of the plaintiffs, defendants and others, and at the special instance and request of the defendants and other stockholders. That because of the foregoing premises, the defendants became liable and bound to pay five-nineteenths of said debt and the plaintiffs fourteen-nineteenths of said debt; that said fractions represent the proportionate interests of the plaintiffs and defendants, the only solvent parties interested."

All the testimony offered by appellants was in support of this count, and if there was no variance between the allegations and the proof as to the parties to the contract to liquidate the corporation, a point we are not deciding, appellants' evidence fully sustained the allegations of this count. As there was no proof that the corporation was abandoned, and that the stockholders formed a partnership to operate the mine, all allegations on the issue of partnership go out of the case. Appellants' pleadings consume 78 pages of the transcript; but what we have said states the nature of the original petition and of the amended petitions.

On the issues thus made the trial court correctly instructed in favor of appellees on their pleas of limitation. Plaintiffs alleged September 25, 1923, as the date of the maturity of their demand against defendants. On April 3, 1924, they instituted suit against defendants, alleging that the debts were incurred by plaintiffs and defendants as partners; that defendants had agreed that plaintiffs should liquidate the partnership affairs, pay its debts, and the defendants would repay to plaintiffs their proportional share of the indebtedness of the partnership. On the count of the amended petition plaintiffs pleaded that the debts were by the corporation and the liabilities of the stockholders who joined in the execution of the notes were those of joint makers or sureties or indorsers. The agreement to liquidate the debts, as pleaded by the amended petition and testified to by appellees, was to liquidate the debts of the corporation and not of a partnership, an entirely different agreement from that pleaded by the original petition. To make this point, as well as the other elements of the original petition, perfectly clear, we here quote from that petition:

"And plaintiffs would further show to the court that soon after the filing of said Articles of Incorporation, it was understood and agreed by and between the Plaintiffs and the Defendants, and the said Lee and Dalton, that the organization of said corporation

should be abandoned, and that these plaintiffs should continue their development and management of said lease, and should purchase the necessary machinery, equipment and material, and incur the necessary expense for labor, in the operation thereof, for the joint account of Plaintiffs and the Defendants, and said Lee and Dalton, and that it was then and there understood and agreed by and between the Plaintiffs and the Defendants, and said Lee and Dalton, that the expense so incurred should be paid by them, and each of them, in the proportion of their respective interests in said joint venture, as set out in said Articles of Incorporation.

"If Plaintiffs are mistaken in their allegation that it was understood and agreed by and between them and the Defendants that the organization of said corporation should be abandoned, then the Plaintiffs allege, in the alternative, that the organization of said corporation was abandoned with the knowledge and consent of the Defendants, and each of them, and that after its abandonment, and with full knowledge thereof, the Defendants, and each of them, ratified and approved the abandonment thereof, and contracted and agreed to pay the expense incurred by the Plaintiff in the purchase of machinery, equipment and material, and in payment for labor used in the operation of said lease, in the proportion that the stock subscribed for by the said Sandsberry in said Oriental Mining Company bore to the total stock subscribed for, as set out in said Articles of Incorporation.

"These Plaintiffs further allege that the organization of the corporation, to have been known as the 'Oriental Mining Company,' as set forth in said Articles of Incorporation, with the knowledge, acquiescence and consent of Defendants, and each of them, was never in fact consummated, as required by the Statutes of the State of Missouri in such cases made and provided; and that with the knowledge, acquiescence and consent of the Defendants, and each of them, and at their special instance and request, the Plaintiffs continued their management and operation of said lease for the joint account of Plaintiffs and Defendants, and said Lee and Dalton, and in so doing incurred and paid, and were compelled to incur and pay, divers and sundry indebtedness as hereinafter more particularly shown, for machinery, supplies, equipment and material, and for labor in the operation of said lease, and that it was agreed and understood by and between the Plaintiffs and Defendants, and said Lee and Dalton, that the profits or losses resulting from said enterprise should be divided between the Plaintiffs and the Defendants, and the said Lee and Dalton, in the proportion of their respective interests in said lease and properties, as set out in said Articles of Incorpora-

tion; and Plaintiffs allege that they and the Defendants and the said Lee and Dalton, in law and in fact constitute a co-partnership in the conduct of said joint enterprise; and that, as between themselves, each contracted and agreed, and in law became bound and obligated, to pay the expenses so incurred in the operation of said lease in the proportion of his respective interest therein, as hereinabove set out, and to protect and save the others, harmless from such proportion of such loss and expense."

We think that the amended petition stated an entirely new cause of action, which was barred by the statutes of limitation at the time of the filing of the amended petitions. In Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, speaking for the Supreme Court, Judge Brown, in discussing the elements of a new cause of action arising from the allegations of an amended petition and the ruling of the court sustaining the issues of limitation against the new cause of action pleaded by the amended petition, said:

"If the facts alleged in the sixth amended petition do not express substantially the same contract as that set up in the original petition, then the judgment of the court sustaining the exception must be affirmed. It is not sufficient that the causes of action be similar in their nature, but they must be essentially identical. Four tests are laid down by which to determine the identity of the causes of action: (1) Would a recovery had upon the original bar a recovery under the amended petition; (2) would the same evidence support both of the pleadings; (3) is the measure of damages the same in each case; (4) are the allegations of each subject to the same defenses? 1 Am. and Eng. Enc. of Pl. and Pr., p. 556. We are of opinion that the second and last furnish the best tests by which to determine the matter before us, and we can safely say that if the same testimony would not support the allegations in each of these pleas, and that the same defenses could not be interposed to each of them, they are not identical, and therefore the amended petition presents a new cause of action."

The principles of that case were reaffirmed with the express approval of the Supreme Court in Warnock v. Mills, 291 S. W. 850. In Fuller v. El Paso Times Co. (Tex. Com. App.) 236 S. W. 455, Judge Powell, who later wrote the Warnock Case, reviewed many of the authorities of this state on the issue of a new cause of action as between the allegations of the original and the amended petitions. On these authorities we think the amended petitions clearly stated a new cause of action, which was barred by limitation when they were filed. On this conclusion it becomes unnecessary to discuss the other propositions involved in this appeal.