IN THE SUPREME COURT OF TEXAS
 
════════════
No. 02-1031
════════════
 
Reata Construction 
Corporation, Petitioner,
 
v.
 
City of Dallas, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued December 
12, 2004
 
Justice Brister, joined by Justice Hecht and Justice O’Neill, concurring.
 
I join in the 
Court’s judgment, as American law has long held that a government waives 
immunity from suit by filing an affirmative claim in court. I write separately 
because I disagree with the State that this rule is mistaken, and with the Court 
that we must partially abrogate sovereign immunity because the rule is in 
“tension” with other jurisdictional rules. Instead, sovereign immunity has 
always had its own set of jurisdictional rules because jurisdiction over private 
and public parties is simply different. 
In all cases, 
whether the parties are public or private, a court must have jurisdiction to 
issue a binding judgment. But “[j]urisdiction,” as the United States Supreme 
Court recently observed, “is a word of many, too many, meanings.”[1] Both subject-matter jurisdiction and 
personal jurisdiction are “jurisdictional” in that a court cannot enter judgment 
without them.[2] Sovereign immunity is also 
“jurisdictional,” but in ways that do not fit neatly into the other two 
categories.
Subject-matter 
jurisdiction concerns a court’s power over cases.[3] It stems from the doctrine of 
separation of powers, and aims to keep the judiciary from encroaching on 
subjects properly belonging to another branch of government.[4] Subject-matter jurisdiction cannot be 
waived or conferred by agreement, must be considered by a court sua 
sponte, and can be raised for the first time on appeal.[5] 
Personal 
jurisdiction, by contrast, concerns a court’s power over parties.[6] A court cannot enter judgment against 
a party who has not been haled into court through proper service,[7] and its writ extends beyond its 
borders only as far as due process allows.[8] Personal jurisdiction can be 
voluntarily waived by appearance,[9] or impliedly by an untimely 
objection.[10]
Throughout 
Texas history, we have held that sovereign immunity is “jurisdictional”[11] but without characterizing it as 
either subject-matter or personal jurisdiction. To the contrary, in Anderson, 
Clayton we held that when the State waived immunity by filing suit, the 
trial court “acquired jurisdiction of the parties and subject‑matter.”[12] 
In the last 
seven years we have addressed sovereign immunity almost exclusively in terms of 
subject-matter jurisdiction.[13] This approach began with a per curiam 
opinion in 1999,[14] which distinguished a 1988 opinion 
that appeared to say the opposite.[15] But acknowledging that sovereign 
immunity implicates subject-matter jurisdiction does not mean it does not 
implicate personal jurisdiction, too. Indeed, the earliest Texas cases, dating 
even from the Republic, addressed sovereign immunity in terms of “amenability” 
to suit,[16] a term borrowed for personal 
jurisdiction.[17]
These early 
Texas cases were not aberrations; sovereign immunity has historically been 
considered a problem primarily of personal jurisdiction. Blackstone addressed 
sovereign immunity under “The Rights of Persons,” concluding that sovereign 
immunity arises from the nature of the sovereign party, not the subject matter 
of the sovereign’s case:
 
Hence it 
is, that no suit or action can be brought against the king, even in civil 
matters, because no court can have jurisdiction over him. For all jurisdiction 
implies superiority of power: authority to try would be vain and idle, without 
an authority to redress; and the sentence of a court would be contemptible, 
unless that court had power to command the execution of it; but who, says Finch, 
shall command the king?[18]
 
Once bereft 
of kings, the earliest American cases still viewed sovereign immunity in terms 
of personal jurisdiction.[19] In The Federalist No. 81, 
Alexander Hamilton borrowed the language of personal jurisdiction in stating, 
“It is inherent in the nature of sovereignty not to be amenable to the suit of 
an individual WITHOUT ITS CONSENT.”[20] In the United States Supreme Court’s 
first major opinion, the state of Georgia refused to file a plea or appear at 
oral argument for fear that its appearance would waive sovereign immunity.[21]
The full 
story is that sovereign immunity includes concerns about both subject-matter and 
personal jurisdiction, but is identical to neither. In terms of subject matter, 
whether a government ought to compensate particular claimants involves policy 
issues beyond the traditional scope of judicial proceedings.[22] But at the same time, there is some 
incongruity in saying that routine tort and contract suits are beyond the 
traditional subject matter of the courts simply because one party is a 
government employee.[23]
Similarly, 
concerns about a court’s power to order the government to appear, give evidence, 
and pay a judgment share much in common with personal jurisdictional limits over 
foreign parties. Yet, it seems awkward to say Texas courts cannot “reach” other 
Texas governmental units, when all necessarily share the same space, and 
sometimes the same buildings.
Given these 
similarities and differences with each doctrine, it should come as no surprise 
that the jurisdictional rules governing sovereign immunity borrow from both but 
are identical to neither. Thus, just like subject-matter jurisdiction, sovereign 
immunity may be raised by the court even if the parties do not.[24] But like personal jurisdiction, Texas 
law has long held that a governmental entity waives immunity by filing suit on 
an affirmative claim.[25] 
Federal cases 
addressing the sovereign immunity of the states reflect this same hybrid nature, 
including elements of both subject-matter and personal jurisdiction.[26] And like the Texas rule, there is no 
question that states waive immunity from suit in federal court by claiming an 
interpleaded fund,[27] filing a bankruptcy claim,[28] or removing a case to federal 
court.[29]
Thus, the 
jurisdictional rules of sovereign immunity cannot be derived by simply plugging 
in the rules of subject-matter or personal jurisdiction governing private 
parties and cases. For one thing, those rules conflict. And because sovereign 
immunity includes elements of both but all of neither, there is no general rule 
about which should apply or be preempted.
Rather than 
abrogating sovereign immunity piecemeal or adopting rules governing either 
subject-matter or personal jurisdiction wholesale, we should look to those rules 
for guidance, applying them (or a hybrid of them) according to the purposes and 
peculiar necessities of sovereign immunity. This is precisely what the Court has 
done when considering arguments to limit or abolish sovereign immunity 
completely, looking to the purposes behind the doctrine for guidance.[30] Considering those same purposes here 
shows why the traditional rule that a sovereign’s affirmative claim waives 
immunity from suit is the right one. 
First, 
sovereign immunity is founded on the presumption that governments will do 
justice to their citizens, by one means or another.[31] By filing suit in court, a government 
makes clear that it has chosen to pursue justice (and presumably not just for 
itself) through litigation, at least in that particular case.
Second, 
“[c]oercion . . . is incompatible with sovereignty.”[32] Without some indication of consent, 
“the powers of judicial tribunals, however great they may be, are not of a 
character so transcendent as to enable them to afford [a] remedy.”[33] But when a government voluntarily 
seeks affirmative relief from the courts, it is not coercion but cooperation for 
the courts to adjudicate the matter.
Third, 
sovereign immunity protects the government from the distraction and expenses 
that would ensue if citizens could sue the government whenever they pleased.[34] But again, when the government brings 
its own affirmative claims, it has obviously concluded that the distraction and 
expense of litigation is worthwhile in that particular case.
Fourth, the 
protection sovereign immunity affords to the public fisc suggests that a 
government waiver by filing a claim should be limited to that claim’s extent.[35] Absent sovereign immunity, policy 
decisions regarding government spending would be made by judges and juries, not 
the Legislature.[36] That might still be the case if, when 
a government asserted its own claim, it waived sovereign immunity as to much 
larger counterclaims and entirely different transactions. By filing suit on a 
claim, a government consents to have the courts decide its entitlement to a 
particular sum, but no more.
Finally, 
while courts in these cases see separation among the branches, parties sued by 
the State may see only different parts of the same tree. This paradoxical 
three-in-one structure (which no doubt resonated with the trinitarian 
Founders)[37] requires the courts at some point to 
insist that “[t]here is not one law for the sovereign and another for the 
subject.”[38] A rule allowing governments to make a 
claim but preventing all offsetting claims looks less like sovereign immunity 
than sovereign inequity.
Thus, the 
traditional rule of limited waiver by appearance is consistent with all of the 
purposes of sovereign immunity. It is not in “tension” with the jurisdictional 
rules governing private parties; it is simply a different rule. 
Nor do I see 
any unresolvable tension between this rule and our frequent statements that 
sovereign immunity must be waived by the Legislature in clear and unambiguous 
terms,[39] for several reasons. First, while the 
Legislature has taken an active role in deciding which particular suits may be 
filed against governmental units,[40] it has not played the same role in 
limiting which particular suits may be filed by them. Trying to collect 
an affirmative claim does not raise the same kinds of concerns as trying to 
avoid one.
Second, while 
the Legislature may waive immunity in individual suits, in recent years it has 
done so quite rarely.[41] Given the press of other business in 
a rapidly growing state, it is unrealistic to expect immunity decisions to be 
made piecemeal rather than collectively. The reasons for strictly construing 
waiver for whole classes of suits against the government are not the same when a 
single government unit files a single case.
Finally, when 
governments bring suit, they must do so through agents who ultimately derive 
their authority from the Legislature.[42] Those agents generally are not 
authorized to waive immunity from liability, or immunity from suit in individual 
cases. But when they file suit on an affirmative claim, they must be doing so 
with legislative authorization. If the rule were otherwise, it is not clear how 
a government could ever assert its own claims. 
This Court 
found it “well settled” more than 100 years ago that governments who file suit 
must follow the same rules as the governed:
 
It is well 
settled that so long as the state is engaged in making or enforcing laws, or in 
the discharge of any other governmental function, it is to be regarded as a 
sovereign, and has prerogatives which do not appertain to the individual 
citizen; but when it becomes a suitor in its own courts, or a party to a 
contract with a citizen, the same law applies to it as under like conditions 
governs the contracts of an individual.[43] 
 
When a 
government voluntarily enters a contract, it waives sovereign immunity from 
liability (though not suit) to that extent;[44] when a government voluntarily files 
suit, it waives sovereign immunity from suit (though not liability) to that 
extent as well. Because the City of Dallas filed an affirmative claim here, it 
waived immunity from suit to that extent.
________________________________
Scott 
Brister
Justice
 
OPINION 
DELIVERED: June 30, 2006






[1] Steel Co. v. Citizens for a Better Env’t, 523 
U.S. 83, 90 (1998) (internal quotation marks omitted).

[2] See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 
574, 583-84 (1999); CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996); 
see also Anderson, Clayton & Co. v. State, 62 S.W.2d 107 (Tex. 
1933).

[3] See Arbaugh v. Y & H Corp., 126 S.Ct. 1235, 
1244 (2006); CSR Ltd., 925 S.W.2d at 594.

[4] See Texas Ass’n of Bus. v. Texas Air Control 
Bd., 852 S.W.2d 440, 444 (Tex. 1993).

[5] See Univ. of Texas Sw. Med. Ctr. v. 
Loutzenhiser, 140 S.W.3d 351, 358 (Tex. 2004). 

[6] See CSR Ltd., 925 S.W.2d at 
594.

[7] See Wilson v. Dunn, 800 S.W.2d 833, 836 (Tex. 
1990).

[8] See World‑Wide Volkswagen Corp. v. Woodson, 444 
U.S. 286, 292 (1980).

[9] See Hilburn v. Jennings, 698 S.W.2d 99, 100 
(Tex. 1985). 

[10] See Tex. 
R. Civ. P. 120a.

[11] See, e.g., Missouri Pacific R.R. Co. v. Brownsville 
Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970); State v. Lain, 349 
S.W.2d 579, 581‑82 (Tex. 1961); W. D. Haden Co. v. Dodgen, 308 
S.W.2d 838, 841 (Tex. 1958); Walsh v. Univ. of Tex., 169 S.W.2d 993, 994 
(Tex. Civ. App.‑El Paso 1942, writ ref’d).

[12] Anderson, Clayton, 62 S.W.2d at 110 (emphasis 
added).

[13] See, e.g., Tex. Dep’t of Parks & Wildlife v. 
Miranda, 133 S.W.3d 217, 224 (Tex. 2004); Tex. Natural Res. Conservation 
Comm'n v. IT‑Davy, 74 S.W.3d 849, 855 (Tex. 2002); Dep’t of Transp. v. 
Garza, 70 S.W.3d 802, 808 (Tex. 2002); Tex. Dep’t of Criminal Justice v. 
Miller, 51 S.W.3d 583, 585 (Tex. 2001).

[14] See Tex. Dep’t of Transp. v. Jones, 8 S.W.3d 
636, 638 (Tex. 1999) (per curiam).

[15] See Davis v. City of San Antonio, 752 S.W.2d 
518, 520 (Tex. 1988) (“We do not read our opinion in Duhart [a previous 
sovereign immunity case] as holding that the trial court lacked subject matter 
jurisdiction of the case and that any judgment rendered for the plaintiff would 
have been void.”). Between 1988 and 1999, the Seventh Court of Appeals had 
suggested sovereign immunity concerned both. See Bd. of County Comm'rs of 
County of Beaver Okl. v. Amarillo Hosp. Dist., 835 S.W.2d 115, 130 n.2 (Tex. 
App.‑Amarillo 1992, no writ) (“[S]overeign immunity concerns both subject 
matter jurisdiction and personal jurisdiction.”) (emphasis added); Laykin v. 
McFall, 830 S.W.2d 266, 267 n.1 (Tex. App.‑Amarillo 1992, no writ) 
(same).

[16] See, e.g., Kenedy v. Jarvis, 1 S.W. 191, 194 
(Tex. 1886); Bd. of Land Comm’rs v. Walling, Dallam 524 (Tex. 1843) 
(“[I]t is one of the essential attributes of sovereignty not to be amenable to 
the suit of a private person without its own consent . . .”).

[17] See, e.g., Tex. Fam. Code ' 157.375(a) (“While in this state for the sole purpose 
of compelling the return of a child through a habeas corpus proceeding, the 
relator is not amenable to civil process and is not subject to the 
jurisdiction of any civil court except the court in which the writ is pending.”) 
(emphasis added); Tex. R. Civ. P. 
120a(1) (providing for special appearances to object to jurisdiction “over the 
person or property of the defendant on the ground that such party or property is 
not amenable to process issued by the courts of this State”) (emphasis 
added).

[18] 1 William Blackstone, Commentaries on the Laws of England 
*235.

[19] See generally Caleb Nelson, Sovereign 
Immunity as a Doctrine of Personal Jurisdiction, 115 Harv. L. Rev. 1559 
(2002).

[20] The Federalist 
No. 81 (emphasis in original).

[21] See Nelson, supra note 19 at 1598 
(discussing Chisholm v. Georgia, 2 U.S. (2 Dall.) 419 
(1793)).

[22] See Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 
414 (Tex. 1997) (Hecht, J., concurring) (“[N]ot all the factors that weigh in 
determining the State’s liability on its contracts can be assessed in a judicial 
proceeding.”).

[23] See State v. Snyder, 18 S.W. 106, 107 (Tex. 
1886) (“The state, as a plaintiff, has the same right as other plaintiffs to 
institute and maintain actions in the district courts upon any cause of action 
of which, under the terms of the constitution, such courts have jurisdiction, 
and so by force of the jurisdiction conferred on such courts by the 
constitution, and without reference to any statutory 
authorization.”).

[24] Compare Tex. Dep’t of Parks and Wildlife v. 
Miranda, 133 S.W.3d 217, 226 (Tex. 2004) (“The trial court must determine at 
its earliest opportunity whether it has the constitutional or statutory 
authority to decide the case before allowing the litigation to proceed.”), 
with Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998) 
(raising ripeness issue sua sponte as an element of subject-matter 
jurisdiction).

[25] Kinnear v. Tex. Comm’n on Human Rights, 14 
S.W.3d 299, 300 (Tex. 2000); Anderson, Clayton & Co. v. State, 62 
S.W.2d 107, 110 (Tex. 1939).

[26] See Wisc. Dep’t of Corr. v. Schacht, 524 U.S. 
381, 394 (1998) (Kennedy, J., concurring) (“In certain respects, the immunity 
[accorded states by the Eleventh Amendment] bears substantial similarity to 
personal jurisdiction requirements, since it can be waived and courts need not 
raise the issue sua sponte. Permitting the immunity to be raised at any stage of 
the proceedings, in contrast, is more consistent with regarding [it] as a limit 
on the federal courts’ subject‑matter jurisdiction.”) (citations 
omitted).

[27] See Clark v. Barnard, 108 U.S. 436, 447-48 
(1883).

[28] See Gardner v. New Jersey, 329 U.S. 565, 573‑75 
(1947); see also Cent. Va. Cmty. Coll. v. Katz, 126 S. Ct. 990, 1004 
(2006) (holding that States agreed “not to assert any sovereign immunity defense 
they might have had in proceedings brought” in bankruptcy). 

[29] See Lapides v. Bd. of Regents of Univ. Sys. of 
Ga., 535 U.S. 613, 616 (2002).

[30] See Wichita Falls State Hosp. v. Taylor, 106 
S.W.3d 692, 695-96 (Tex. 2003).

[31] State v. Snyder, 18 S.W. 106, 109 (Tex. 1886) 
(“It is to be conclusively presumed, in the absence of a statute authorizing 
suit against the state in reference to a given matter, that it fully recognizes 
every just claim the citizen has against it, that in its own way it will do 
justice in reference thereto, and that it has ability to do so; and this is one 
of the reasons why no suit can be brought against the state without its 
consent.”); Borden v. Houston, 2 Tex. 594, 611-12 (1847); Bd. of Land 
Comm’rs v. Walling, Dallam 524 (Tex. 1843).

[32] Borden, 2 Tex. at 611.

[33] Walling, Dallam 524 (cited with approval by this Court 
in Kenedy v. Jarvis, 1 S.W. 191, 194 (Tex. 1886)); accord, Snyder, 
18 S.W. at 106, 110; Bates v. Republic, 2 Tex. 616 
(1847).

[34] Texas Natural Res. Conservation Comm'n v. 
IT‑Davy, 74 S.W.3d 849, 854 (Tex. 2002); Walling, Dallam at 525-26 
(Tex. 1843) (“The experience of ages and the wisdom of the most enlightened 
statesmen and judicial expositors have sanctioned the doctrine that less injury 
would arise from the delay or even the denial of justice to individuals than 
from the distraction and imbecility consequent upon the government's being 
involved in continual and harassing controversies at the will or caprice of 
every citizen in the community.”).

[35] State v. Humble Oil & Ref. Co., 169 S.W.2d 
707 (Tex. 1943); Snyder, 18 S.W. at 110; Borden, 2 Tex. at 611-12 
(1847); Bates, 2 Tex. at 618.

[36] IT‑Davy, 74 S.W.3d at 854 (“Subjecting the 
government to liability may hamper governmental functions by shifting tax 
resources away from their intended purposes toward defending lawsuits and paying 
judgments.”); Bates, 2 Tex. at 618. 

[37] Cf. Note, The Twenty Dollars Clause, 118 
Harv. L. Rev. 1665, 1680 (2005) 
(“In an analogy that would have resonated with the Founders, the trilogy of 
life, liberty, and property was as the Christian trinity of Father, Son, and 
Holy Spirit: three‑in‑one; the same, but different.”).

[38] Fristoe v. Blum, 45 S.W. 998, 1000 (Tex. 1898) 
(quoting People v. Stephens, 71 N. Y. 549).

[39] See, e.g., Wichita Falls State Hosp. v. Taylor, 
106 S.W.3d 692, 696 (Tex. 2003); IT‑Davy, 74 S.W.3d at 854; Univ. of 
Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175, 177 (Tex. 1994); 
Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980).

[40] See IT‑Davy, 74 S.W.3d at 862 (Hecht, J., 
concurring).

[41] See id.

[42] See Pub. Util. Comm’n v. City Pub. Serv. Bd. of San 
Antonio, 53 S.W.3d 310, 316 (Tex. 2001).

[43] Fristoe, 45 S.W. at 999.

[44] See Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 
405-06 (Tex. 1997).